[S. F. No. 7269. Department Two.—June 21, 1917.]

## MARTHA E. HALLIDIE, as Trustee, etc., Appellant, v. VICTOR ENGINGER, Respondent.

ATTACHMENT — FRAUDULENT PROCUREMENT OF SALE OF CORPORATION STOCK—RECOVERY FOR STOCKHOLDERS—ACTION EX DELICTO.—In view of section 537 of the Code of Civil Procedure, which limits writs of attachment to actions arising on contracts, express or implied, for the recovery of money only, an attachment cannot be issued in an action brought by the plaintiff as trustee for the stockholders of a corporation which had forfeited its charter to recover a sum of money received by the defendant from dividends and as proceeds from the sale of stock which the defunct corporation had been induced to sell to defendant by false representations, since the action is an action *ex delicto* for fraud, and not one upon an implied contract for the direct payment of money.

APPEAL from an order of the Superior Court of the City and County of San Francisco discharging an attachment. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Osgood Putnam, Wm. C. Crittenden, and Chas. C. Boynton, for Appellant.

Cushing & Cushing, William H. Gorrill, and Wm. S. McKnight, for Respondent.

HENSHAW, J.—The following statement of this cause of action is plaintiff's own: "The plaintiff sues as the trustee for the stockholders of a certain corporation, California Wire Works, which has forfeited its charter. The complaint alleges facts showing in brief that the defendant while acting in a fiduciary capacity, by means of certain grossly fraudulent misrepresentations and acts, induced said California Wire Works to sell to defendant seventy-five shares of stock in another corporation known as the California Wire Cloth Company for a mere fraction of its real value. That the total amount paid by defendant for said stock was $35 per share, viz., $2,450 for said seventy-five shares. That within seven years thereafter defendant received $47,950 as dividends on said stock

and sold said stock for a further sum of $54,250, making a total of one hundred and two thousand two hundred dollars received by defendant on said seventy-five shares of stock so fraudulently obtained from said California Wire Works. Applying the rule of compound interest at the legal rate of seven per cent per annum swells the total amount due from defendant to something in excess of $190,000.''

Under this complaint plaintiff levied a writ of attachment. Respondent moved to discharge the attachment; the motion was granted and this appeal followed. Section 537 of our Code of Civil Procedure provides that an attachment may issue (subdivision 1) ''In an action upon a contract, express or implied, for the direct payment of money.'' Appellant here contends that her action is upon an implied contract for the direct payment of money; that even if the action be considered an action in equity, still as it is upon an implied contract for the direct payment of money, the attachment was legal.

The fact that appellant seriously maintains this position shows the necessity for certain general observations to clear the way for a true comprehension of the matter. The first of these general observations is that the writ of attachment as now employed was unknown to the common law, is a creature of legislative enactment, and has the scope, and only the scope, which the legislature has chosen to accord to it. In some states an attachment may issue in all cases, in some states it may be issued in actions *ex delicto,* in some states it may be issued against the property of the perpetrator of fraud, but in every state the limit of the right to the writ is found in the language of the statute itself. Therefore, adjudications of sister states are valueless in a consideration of the question unless it be shown that their statutes are in terms substantially identical with our own. The next general consideration is that legislatures in establishing the simplified code pleading and in thus abolishing the *forms* of common-law actions did not destroy, and even if it had desired could not destroy, the essential *characteristics* of those actions so long as the common law remains the basis of our jurisprudence. Anciently, no action at law could be brought without the permission of the king's writ, *breve originalis,* and the writ itself limited with rigidity the controversy over which the plaintiff was permitted to sue. If in a material respect his

declaration which followed departed from the terms of the
original writ, the variance was fatal, as the litigant was en-
deavoring to sue without the permission and sanction of the
original writ. This inevitably resulted in the grouping of
actions into kinds and classes whose limitations were defined
by the precedents of the original writs. The narrow range
of these original writs forced the adoption of the statute of
Westminster II, allowing the issuance of such writs in cases
similar to those in which they had previously been issued, thus
giving rise to a great number of new forms of action, though
in well nigh all, being actions at law, the redress sought was
damages. One of the great divisions of these common-law
actions was the division known as personal actions, including
all those brought for specific recovery of goods and chattels,
for damages or other redress for breach of contract, for
wrongs or injuries of whatever description, and these personal
actions in turn were divided into actions *ex contractu* and *ex
delicto,* the former having to do with the redress for violations
of contracts, the latter having to do with compensation for
an infinite variety of personal wrongs which might be inflicted.
''It is clear that before one is able to distinguish between
an action *ex contractu,* or upon contract, and *ex delicto,* or in
tort, he must understand the essential elements of each of
these causes of action and their distinguishing feature. This
distinguishing feature is not found in the means of accom-
plishing an injury, nor in the nature of the harm or damage
inflicted, nor indeed is it indicated by the presence or absence
of a contractual relation, because it may be necessary that a
certain contractual relation exist between the parties in order
that a particular course of conduct, *e. g.,* a degree of care or
negligence, be unlawful. The distinguishing feature of a tort
consists in the nature of the obligation which is violated. A
tort, in contemplation of English law, consists in a violation
of a duty imposed by the general law upon all persons occupy-
ing the relation which is involved in a given transaction or
*res gestae.''* (Andrews' Stephen's Pleading, sec. 61.) The
remedies and recoveries in a common-law action varied greatly,
depending on whether the action was *ex contractu* or *ex
delicto,* and partly for this reason there grew up a series of
legal fictions at common law under which in a limited class of
cases the suitor was allowed to select his form of action. The
development of these fictions led to the creation and recog-

nition of what are known as implied contracts. In some instances the action on implied contract does not in truth rest upon contract at all. In others, the contract may lie at the base of the wrong or may have enabled the perpetrator to have accomplished his wrong. Thus, where A delivers goods to B at B's request, even though B never meant to pay for them, the law erects the legal fiction that he promised to pay, and he will not be heard to deny it in the action for *quantum valebat* in *assumpsit*. But, upon the other hand, if B stole A's watch, A could treat the theft as a contract of sale and sue in like manner *ex contractu*, though in fact there was no foundation whatsoever for the fiction other than the need of broadening A's remedies. (*Downs* v. *City of Baltimore,* 111 Md. 674, [19 Ann. Cas. 644, 41 L. R. A. (N. S.) 255, 76 Atl. 861].) Or again, if B, in the employ of A, misappropriates his money or property, while A could sue *ex delicto* for the wrong, he could, on the other hand, waive the tort and sue, again depending upon the nature of the property converted, either for the value, for goods sold and delivered, or for money had and received. (*Lipscomb* v. *Citizens' Bank,* 66 Kan. 243, [71 Pac. 583] ; *Farmers' Nat. Bank* v. *Fonda,* 65 Mich. 533, [32 N. W. 664].) Nevertheless, while in these limited kinds of cases the suitor might do either, he could not do both. He had to elect his remedy and stand upon his election. If he waived the tort and sued in contract, his writ and declaration charged upon contract only. If he waived his contract and sued in tort, the writ and declaration charged in tort only. Next, let it be remarked, that the common-law distinctions between actions *ex contractu* and actions *ex delicto* have not been changed by the permission to file rambling pleadings containing averments pertaining to both classes of actions, and even averments addressed to equity alone. And, finally, let it be remembered that our statute and statutes like ours grant a writ of attachment only in cases *ex contractu,* and therefore deny it, both in actions *ex delicto* and in actions where equitable relief as such is sought. (*Elliott* v. *Jackson,* 3 Wis. 571; *Thorington* v. *Merrick,* 101 N. Y. 5, [3 N. E. 794] ; *Ebner* v. *Bradford,* 3 N. Y. Abb. Pr. (N. S.) 248.)

With the foregoing in mind we may approach the consideration of our question with some hope of clear elucidation. Drake (Attachments, sec. 10, note) well says in discussing statutes limiting attachments to actions arising on contracts,

express or implied, for the recovery of money only, as does ours, that this language "leaves no room for using it in actions founded in tort," and this most manifestly is true and is so declared in this state. (*Babcock* v. *Briggs,* 52 Cal. 502; *Walker* v. *McCusker,* 65 Cal. 360, [4 Pac. 206] ; *Mudge* v. *Steinhart,* 78 Cal. 34, [12 Am. St. Rep. 17, 20 Pac. 147] ; *Bechtel* v. *Chase,* 156 Cal. 711, [106 Pac. 81].)

In stating as we have done that the writ is unauthorized where the foundation of the action is a demand for equitable relief, we do not mean to be understood as saying that where some exercise of equitable powers, as in settling accounts and striking a balance, is incidentally involved in the action, the attachment may not issue, if, in other respects, the pleadings warrant it. Our rule of decision is to the contrary. (*De Leonis* v. *Etchepare,* 120 Cal. 407, [52 Pac. 718] ; *Kohler* v. *Agassiz,* 99 Cal. 9, [33 Pac. 741].) Therefore, in this complaint we will hold that the facts that an accounting as to the amount of money which the defendant received by way of dividends and from the sale of the stock is necessary to do justice between the parties, and that the plaintiff is suing as trustee for the benefit of those between whom another accounting of the funds of the judgment must be had, will not thereby transform the action into one purely in equity. Having thus declared what this action is not, it is extremely easy to state what it is. It is an action *ex delicto* for fraud. At common law it would have been an action of trespass on the case for damages for deceit, and all the matters pleaded touching moneys derived from dividends and from the sale of property would have been by way of proving special damage in the particular case. That it is such an action no doubt can be entertained. (Kerr on Fraud, p. 330, note; Chitty on Pleading, *p. 137.) True, there are allegations, and pertinent allegations, touching the contract of sale of the stock, but these allegations are useful and valuable only as showing the relationship of the parties by virtue of which the fraud was perpetrated and not as establishing the nature of the action itself. So, too, the complaint charges the defendant, because of his fraud, as being in equity a trustee; but apart from the consideration that it requires a decree in equity to impose this trusteeship, by the very terms of its equitable designation it is a trusteeship arising in tort. That equitable designation is *trustee ex delicto* or *trustee ex maleficio,* which in reality

means no trustee at all and is merely a convenient equitable description of the exactions with which equity will force such a wrongdoer to comply.

A passenger to recover for injuries inflicted by a common carrier must plead the contract of carriage to establish the relationship, but for the injuries inflicted upon him his action is *ex delicto* and not *ex contractu,* precisely as here the contract of sale is pleaded only to show the method employed to accomplish the fraud. And it may be added that if appellant will not have it so, then has she pleaded herself entirely out of court, because, if she insists that this is an action *ex contractu,* the statute of limitations has long since run against it, for it is to be noted that our statute extending the time for the commencement of an action to within three years after the discovery of a fraud does not extend the time for enforcing contracts, express or implied, but extends the time for commencing actions "for relief on the ground of fraud." Anciently, while equity relieved and entertained bills where fraud and its recent discovery were pleaded, the common law was more slow to do so, and the rules and statutes limiting the time for the commencement of the action were enforced with much rigor, so that if the discovery of the wrong was delayed, no action *ex contractu* would be entertained, and so it is that Chitty says: "And again, where there has been a fraud and it is supposed that the statute of limitations will be set up as a defense, an action for the fraud is preferable to the action of *assumpsit* as there is reason to contend that the statute only begins to run from the time the fraud is discovered." (Chitty on Pleading, \*p. 144.)

Wherefore, it follows that the attachment was properly discharged. The order appealed from is therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.