[S. F. No. 8250. In Bank.—May 9, 1919.]

STANFORD HOTEL COMPANY (a Corporation), Respondent, v. M. SCHWIND COMPANY (a Corporation), Appellant.

[1] ATTACHMENT—ACTION EX DELICTO.—An attachment will not lie in an action *ex delicto* for fraud.

[2] ID.—LEGAL OR EQUITABLE NATURE OF ACTION IMMATERIAL.—Under subdivision 1 of section 537 of the Code of Civil Procedure, which provides for the issuance of an attachment in an action upon contract, express or implied, for the direct payment of money, it is immaterial whether the action be regarded as strictly legal or strictly equitable or partly legal and partly equitable, if the purpose of the action is the recovery on such a contract.

[3] ID.—ACTION FOR RENT—FRAUDULENT TRANSFER OF ASSETS BY CORPORATION LESSEE—NATURE OF ACTION—RIGHT TO ATTACHMENT.—An action to recover rent under a lease from a corporation to whom the original corporation lessee had assigned all of its assets except the lease, is not converted from an action on an express contract for the direct payment of money into an action *ex delicto* for fraud and the plaintiff deprived of the right to a writ of attachment under subdivision 1 of section 537 of the Code of Civil Procedure, by reason of the allegation of facts showing not only that the transferee took the assets as part of a scheme to defraud creditors, but that it was in fact the original debtor masquerading under a different name.

[4] ID.—PRAYER OF COMPLAINT—OMISSION TO ASK FOR MONEY JUDGMENT—CAUSE OF ACTION NOT CHANGED.—In such action, the omission to ask in the prayer of the complaint for a money judgment, did not have the effect of making the action one *ex delicto* for fraud, where it was asked in the prayer that it be decreed that defendants hold the transferred property charged with the payment of plaintiff's claim, with interest and costs, and that the property be sold in payment thereof.

[5] CORPORATIONS—REORGANIZATION—LIABILITY FOR DEBTS OF FORMER CORPORATION.—Where a corporation reorganizes under a new name

but with practically the same stockholders and directors, and continues to carry on the same business, a court of equity will regard the new corporation as a continuation of the former corporation, and will hold it liable for the debts of the former corporation.

[6] ACTION FOR RENT—PLEADING—PARTIES—FORMER CORPORATION UNNECESSARY DEFENDANT.—In such action it is unnecessary to make the former corporation a party defendant.

[7] ATTACHMENT—NONRESIDENT DEFENDANT—AFFIDAVIT—AVERMENT OF NONRESIDENCE—CONSTRUCTION OF CODE.—It is not necessary within the meaning of sections 537 and 538 of the Code of Civil Procedure that in every case of a nonresident defendant, the fact of nonresidence must be averred in the affidavit on attachment, since under subdivision 1 of the former section, it is the nature of the cause of action against such a defendant rather than the fact of his residence that controls, and it is only in those cases wherein the cause of action is one contemplated by either subdivision 2 or 3 that it is necessary to aver that the defendant is a nonresident.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a motion to dissolve an attachment. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

G. B. Benham, Edward Lande and Frank A. Duryea for Appellant.

W. W. Sanderson for Respondent.

LAWLOR, J.—This is an appeal from an order denying a motion to dissolve an attachment.

The Stanford Hotel Company is the lessor in a certain lease upon which the Maryland Dairy Lunch Company, a California corporation and the original debtor, is obligated in the sum of $3,617.60, as unpaid rent, from March 1, 1916, to October, 1916, the monthly rental of the demised premises being $452.25. The Lunch Company, prior to January 26, 1916, carried on an extensive restaurant business in San Francisco in four locations, one of which was the premises leased from the plaintiff at 250 Kearny Street. One M. Schwind was the president and a director of the Lunch Company and the owner of nine-tenths of the capital stock thereof. From the complaint it appears that the Lunch Company was solvent and meeting its ordinary and current liabilities, when, some

time prior to January 26, 1916, the said Schwind and the
other directors of the Lunch Company contrived a fraudulent
scheme to evade the payment of the rent due to the plaintiff,
and to escape further liability upon its said lease.    They or-
ganized a Nevada corporation, the M. Schwind Company,
the defendant in the present action, with a capital stock of
one thousand shares and a perpetual charter permitting the
carrying on of business elsewhere than in the state of Nevada,
and also providing an exemption of stockholders' liability;
996 shares of said company were issued to M. Schwind,
who became a director thereof, the other four directors hold-
ing but one share each.    On January 25, 1916, this corpora-
tion duly complied with the laws of California and filed its
articles of incorporation.    Meanwhile the Maryland Dairy
Lunch Company had deliberately refused and neglected to
pay its license tax and franchise tax to the state of California,
thereby forfeiting its charter on March 4, 1916.    On January
26, 1916, the Lunch Company held a meeting of its board of
directors and passed a resolution selling and transferring to
the defendant corporation its three places of business with
the leasehold rights of occupancy in the same, and in all its
property.    No mention of the business carried on at 250
Kearny Street was made in this bill of sale, nor was the lease
included therein.    The bill of sale was not acknowledged and
recorded until after the dissolution of the Lunch Company,
namely, on March 24, 1916.    The M. Schwind Company con-
tinued ostensibly to carry on business at 250 Kearny Street
after the bill of sale was made and delivered but before it was
acknowledged and recorded, that is, until March 14, 1916,
when the premises were vacated and the lease abandoned by
the Lunch Company.    It is further alleged that the purpose
and effect of this transaction was to eliminate the Lunch
Company as a corporation, and as a result there was left no
property whatever to come into the hands of its directors as
trustees for its creditors; and that the transfer to the
M. Schwind Company was entirely without consideration,
the purpose of the deal being the continuation of the business
of the Lunch Company under a new corporation which was in
substance and effect but a continuation of the old, and owned
substantially by the same stockholders, and carrying on its
business without interruption or delay.

The complaint was filed on October 23, 1916.  The prayer was for a temporary injunction restraining the defendant corporation until after a full hearing of this cause from selling or otherwise disposing of any of the property involved in the bill of sale; that the said sale be declared void and of no effect; that it be adjudged and decreed that the defendant holds the property charged with the payment of the plaintiff's claim for $3,617.60, with interest and costs; that the property be·sold for the plaintiff's claim and costs, and for other further and proper relief.  On the same day Isaac Harris, president of the Stanford Hotel Company, made affidavit for the attachment of the said property.  The affidavit conforms strictly to the requirements of subdivision 1 of sections 537 and 538 of the Code of Civil Procedure.  Upon the filing of the affidavit and the undertaking the writ was issued. Whereupon the defendant, on October 28, 1916, without answering the complaint, moved to dissolve the attachment upon the grounds, briefly stated: (1) That the cause of action is not one in which a writ of attachment could issue; (2) that the writ was improperly issued; (3) that the writ was irregularly issued; (4) that the affidavit upon which the writ was issued is false in the statement therein that the defendant is indebted to the plaintiff in the sum of $3,617.60 over and above all legal setoffs or counterclaims upon an express contract for the direct payment of money, to wit, to pay rent under a lease of certain real property; (5) that the affidavit is false in the statement that the contract was made and is payable in this state.  The only evidence taken on the hearing of the motion was that of Isaac Harris, the president of the plaintiff corporation.  The motion to dissolve was denied, whereupon the defendant appealed.

1. Appellant relies chiefly on the contention that this is not an action in which an attachment may issue, in that it appears upon the face of the complaint that the suit is not one upon contract, but that it is an action *ex delicto* for fraud. [1]  *Hallidie* v. *Enginger,* 175 Cal. 505, [166 Pac. 1], cited by appellant in support of this contention, correctly states the law of this state that an attachment will not lie in an action *ex delicto* for fraud.  The action in that case was held to be one of that character.  But nothing declared in that case, nor in the cases therein cited, can be taken as authority supporting the contention of appellant that this is such an action.

The action in *Hallidie* v. *Enginger, supra,* was brought by the plaintiff, as trustee for the stockholders of the corporation, which had forfeited its charter, to recover a sum of money received by the defendant from dividends and as proceeds from the sale of stock which the defunct corporation had been induced to sell to the defendant by his false representations. It was clearly and essentially an action grounded in fraud, and not one for the direct payment of money upon contract, express or implied. Whatever liability existed on the part of the defendant arose solely through his fraudulent representations, and consequently the gravamen of the action was fraud.

But such is not the case here. The recovery which is sought by the plaintiff is a definite sum of money, due on a contract of lease for the payment of rent. The question here is whether this action is one within the purview of subdivision 1 of section 537 of the Code of Civil Procedure. That subdivision does not contemplate the right of attachment in an action *ex delicto* for fraud. This statement is in accord with *Hallidie* v. *Enginger, supra.* [2] The action must be one upon contract, express or implied, for the direct payment of money. If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or that it may not be one of either law or equity, or of both. Hence it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. What must be established is that the action is based upon contract, either express or implied, for the direct payment of money. It is clear that this action addresses itself to both the legal and the equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment if he is seeking recovery upon the breach of such contract. It is to be kept in mind that there is no suggestion that fraud entered into the making of the contract. The respective obligations of the parties thereunder were for a time performed and then one of them committed a breach of the contract. So the basis and essence of the action is an executed contract for the direct payment of

money, and in order to have satisfied any judgment that may be recovered for such breach the plaintiff sues out a writ of attachment. In order to establish the proposition that the property attached should be responsive to such a judgment the plaintiff invokes certain well-recognized equitable principles. [3] But this does not have the effect of converting the action on the express contract for the direct payment of money into one *ex delicto* for fraud. Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract which is the gravamen of the action. In stating, as we have, that it does not matter that the relief sought partakes of both law and equity we do not mean to be understood as holding that an attachment may be issued upon a creditor's bill to set aside transfers of property in. fraud of creditors. In such a case the gravamen of the cause of action against the transferee is the fraud. But in the present action the facts alleged in the complaint make out not merely a case where the transferee took the property as part of a scheme to defraud creditors, but one where the transferee is in fact the original debtor masquerading under a different name. If the action were one against the tenant by name to recover the rent due, it could not be questioned but that it was one upon a contract for the direct payment of money. Yet that is what the present action really is.

[4] But the appellant argues in support of his contention that this is an action *ex delicto* for fraud that the plaintiff did not in his prayer to the complaint ask for a money judgment. The only direct reference to the claim in the prayer is in these words: "That it be adjudged and decreed . . . that the said defendant holds said property . . . charged with the payment of the plaintiff's claim for $3,617.60, with interest and costs; that the said property be sold for the payment of plaintiff's claim and costs." While the prayer does not in express terms ask for a money judgment, it is nevertheless plain that such a judgment was the purpose of the suit. However, the respondent stated in oral argument that a motion would be interposed in the court below to have the complaint amended in that regard. This may be done. It was said in *Kohler* v. *Agassiz,* 99 Cal. 9, [33 Pac. 741]: "Even

on demurrer to the complaint the defendants cannot object
to the prayer, and certainly, so long as the complaint con-
tains every essential of an action upon contract, they cannot
upon motion to dissolve an attachment accomplish what they
could not upon demurrer; a motion to dissolve the attach-
ment cannot reach the defects in the complaint.'' It was
further held in that case that a motion to dissolve an attach-
ment could not be turned into a demurrer, but that on such
motion we are ''simply to determine whether: (1) The com-
plaint showed the action to be founded upon contract, ex-
press or implied; (2) whether it states facts sufficient to
constitute a cause of action against the defendants; and, if not
(3) does it appear therefrom that it can be so amended as
to state a cause of action upon contract.'' The complaint
sufficiently states a cause of action upon an express contract
for the direct payment of money to satisfy the requirement
of subdivision 1 of section 537.

2. The appellant further contends that attachment will not
lie herein because of lack of privity of contract between the
plaintiff and the defendant corporation. This is equally
without merit. It is true that the contract was entered into
between the plaintiff and the Maryland Dairy Lunch Com-
pany, and that the Lunch Company assigned all of its assets
to the defendant corporation except this lease with the plain-
tiff. As the lease was not included in the bill of sale the law
will not imply a promise on the part of the defendant cor-
poration to pay the rent. (7 R. C. L. 183; 76 Am. St. Rep.
800, note.) **[5]** But it is well established in this state that
under circumstances such as these where a corporation reor-
ganizes under a new name but with practically the same
stockholders and directors and continues to carry on the same
business, a court of equity will regard the new corporation as
a continuation of the former corporation, and will hold it
liable for the debts of the former corporation. (*Blanc* v.
*Paymaster Mining Co.,* 95 Cal. 524, [29 Am. St. Rep. 149, 30
Pac. 765]; *Higgins* v. *California Petroleum Co.,* 122 Cal. 373,
[55 Pac. 155]; 147 Cal. 363, [81 Pac. 1070]; *Strahm* v.
*Fraser,* 32 Cal. App. 447, [163 Pac. 680].) The allegations
of the complaint as to the fraudulent scheme to avoid the
payment of the plaintiff's rent go to the point of making out,
as they do, that the defendant, by name the M. Schwind Com-
pany, is, in fact, the tenant formerly by name the Maryland

Dairy Lunch Company. That equity will strip off the mask of a separate corporate identity, when it is but a mask, is amply sustained by these authorities. [6] Nor is it necessary, as asserted by appellant, to make the former corporation a party defendant. (*Blanc* v. *Paymaster Mining Co.*, *supra.*)

[7] 3. Objection is raised to the sufficiency of the affidavit to support the attachment on the ground that it does not state the fact that the defendant corporation is a nonresident. The question thus presented is whether, within the meaning of sections 537 and 538 of the Code of Civil Procedure, in every case of a nonresident defendant, the fact of nonresidence must be averred in the affidavit on attachment. We think not. Under subdivisions 1 it is the nature of the cause of action against a nonresident defendant rather than the fact of his residence that controls. Only in those cases wherein the cause of action is one contemplated by either subdivision 2 or 3 is it necessary to aver that the defendant is a nonresident. In the case at bar, while the defendant corporation is a nonresident, the cause of action comes within subdivisions 1 and, as already stated, the affidavit is in strict accord with those subdivisions. Subdivisions 1 do not mention the subject of the residence of the defendant. It is only in subdivisions 2 and 3 that the requirement appears. These latter subdivisions are drawn expressly for the benefit of those seeking to attach the property of nonresidents. It follows that in attaching property of a resident the affidavit must be drawn under subdivision 1 of section 538; but it does not follow, as claimed by appellant, that in seeking to attach the property of a nonresident the attachment cannot be sued out under subdivision 1 without averring the fact of nonresidence. It is only when a cause of action does not come within subdivision 1 of section 537 that advantage may be taken of the more liberal requirements of subdivisions 2 and 3. These apply only to nonresidents and in every instance the fact of nonresidence must be averred. Where the cause of action comes under subdivisions 1 of the two sections the residence of the defendant is immaterial. The affidavit is sufficient.

Order affirmed.

Shaw, J., Olney, J., Wilbur, J., Melvin, J., and Lennon, J., concurred.