[Civ. No. 6035. Second Appellate District, Division Two.—May 15, 1928.]

MOE WEINTRAUB, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Harry K. Cohen and Eugene L. Wolver, for Petitioner.

Everett W. Mattoon, County Counsel, and S. V. O. Pritchard, Deputy County Counsel, for Respondent.

CRAIG, J.—The petitioner in this proceeding commenced an action in the Superior Court of Los Angeles County by filing a complaint, which was amended and, as amended,

is made a part of the petition herein, against the California Surety Company, a California corporation; California Surety Company, a Nevada corporation; Fred A. Brun, and unknown defendants designated by fictitious names. The complaint consists of five separate and distinct alleged causes of action. The first count alleges that on or about December 7, 1927, the plaintiff sold and delivered to the defendants certain goods, wares, and merchandise for which they agreed to pay the sum of $392.80, no part of which has been paid. In the second count it is alleged that on said date there was an account stated, that the sum of $392.80 was then found to be due the plaintiff, and that the defendants agreed to pay the same. In the third count the plaintiff avers upon information and belief that the California corporation and the Nevada corporation both comprise the same stockholders, directors and officers, as to personnel, position, and shareholdings; that they are identical and the same as to business management and all other functions, with the same interests and no separate or other capital. It is also alleged in the third count that the plaintiff at all times believed he was doing business with the Nevada corporation; that Brun, its manager, led him to believe that it was legally doing business in California; that the fact that this was untrue came to plaintiff's knowledge subsequently to the sale and delivery of the merchandise; and that plaintiff has no speedy and adequate remedy at law.

The fourth count alleges upon information and belief that the stockholders of the two corporations have no equity or interest in any stocks of which they are the nominal holders, but that the defendant Brun is the sole and exclusive owner and holder of all of their assets; that Brun is the sole owner of both corporations, that they are insolvent, and the plaintiff is unable to collect the amount due from the Nevada corporation by process of law, but that Brun is solvent and able to pay the same; that in truth and in fact both corporations are the same, and that their obligations are equitably the same.

By the fifth count two promissory notes of "The California Surety Company (Signed) Fred A. Brun," for $100 each, dated respectively September 30, 1927, and October 31, 1927, payable to the order of Moe's Printing and Sta-

tionery Company, which were assigned to the plaintiff, are set forth *in haec verba*. It is further alleged that Brun is the sole owner of both corporations, and the only one at whose individual special instance and request the indebtedness was incurred; that he incurred them in the name of the California Surety Company, and is in fact the person obligated therefor; "that plaintiff was inadvertently made a victim of said fraud practiced upon him by said Fred A. Brun in leading plaintiff to believe that the California Surety Company was a Nevada corporation owning large assets and that the said defendant Fred A. Brun there and then knew that the said statements so made to plaintiff were false and that they were made with the intention to defraud plaintiff of the sums complained of."

Judgment is prayed (1) for $392.80; (2) that the California corporation and the Nevada corporation be declared the same and "that the court pierce the corporate veil of said corporations and declare the obligation of each and all binding upon the other"; (3) "that the said corporations are in truth and in fact the property of Fred A. Brun, and a subterfuge used by him to do business, and that the obligations of said corporations are binding upon him"; (4) for the sum of $200, and (5) for costs and for general relief.

A writ of attachment was issued in said action and levied upon certain property of the defendants, whereupon motion was made to release it upon the ground that the suit was based upon fraud, and was therefore in equity, and that in such event an attachment would not lie. The trial court, after argument and presentation of authorities, announced that the motion would be granted, and the petitioner institutes this proceeding in prohibition, praying that a writ issue restraining the entry and enforcement of an order pursuant to such announcement.

Respondent demurred to the petition for writ of prohibition, assigning as grounds therefor that upon the facts presented by the record the petition does not state a sufficient foundation for the relief sought, and again insisting in this court, that the original suit is one in equity wherein a writ of attachment cannot legally be issued.

The petitioner relies principally upon the authority of *Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 Pac. 780]. It there appeared that a California corporation

entitled the Maryland Dairy Lunch Company became indebted to the plaintiff hotel company for rent, that it was solvent, and apparently meeting its ordinary and current liabilities; that in January, 1916, its directors conceived the fraudulent scheme of organizing a Nevada corporation, authorized to do business in California, and to which all of the places of business and leasehold rights of the original corporation were sold and transferred, except that for which rent was due to the plaintiff. It was alleged that one M. Schwind was the sole owner and held all of the stock, with the exception of one share each standing in the names of dummy directors; that after said transfer the California corporation was dissolved, so that Schwind then owned and operated the restaurant business maintained and conducted upon the plaintiff's property, but was not a party to the lease, the original lessee was extinct, and both Schwind and the Nevada corporation denied any liability for the obligation upon which suit was brought. The hotel company commenced an action by complaint setting forth these facts, among others, and alleging that said transfer was without consideration, that the purpose of the transfer was to effectuate the continuation of the business of the original corporation under a new name which was in substance and effect but a continuation of the old business, owned substantially by the same persons, for the purpose of defrauding the plaintiff. The prayer of the complaint demanded a temporary injunction restraining the new corporation from disposing of its assets, that the transfer to it of the properties of the California corporation be declared void, that the defendant be charged as holding all of the property subject to the payment of the plaintiff's claim for $3,617.60 therefrom, and that the property be sold for the plaintiff's claim and its costs. A writ of attachment was levied in that action upon said property, and the defendant, without answering, moved to dissolve the attachment upon the ground that the cause of action was not one in which a writ of attachment could issue. It being claimed that the cause of action alleged was one *ex delicto* for fraud, it was there argued, as here, that the suit was in equity, and that property could not be attached therein. The Supreme Court, in passing upon this question, said:

"The question here is whether this action is one within the purview of subdivision 1 of section 537 of the Code of Civil Procedure. That subdivision does not contemplate the right of attachment in an action *ex delicto* for fraud. This statement is in accord with *Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1]. The action must be one upon contract, express or implied, for the direct payment of money. If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or of both. Hence it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. What must be established is that the action is based upon contract, either express or implied, for the direct payment of money. It is clear that this action addresses itself to both the legal and the equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment if he is seeking recovery upon the breach of such contract. It is to be kept in mind that there is no suggestion that fraud entered into the making of the contract. The respective obligations of the parties thereunder were for a time performed and then one of them committed a breach of the contract. So the basis and essence of the action is an executed contract for the direct payment of money, and in order to have satisfied any judgment that may be recovered for such breach the plaintiff sues out a writ of attachment. In order to establish the proposition that the property attached should be responsive to such a judgment the plaintiff invokes certain well-recognized equitable principles. But this does not have the effect of converting the action on an express contract for the direct payment of money into one *ex delicto* for fraud. Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract which is the gravamen of the action."

Respondents assert with much force and citation of authority various theories which, were it not for the rule announced in *Stanford Hotel Co.* v. *M. Schwind Co., supra,* would require more extended discussion than we deem necessary. They assume that since a suit to "pierce the corporate veils" is an equitable proceeding, that the court had no jurisdiction over accompanying money counts apart from the equity counts, and from this it is argued that "the gravamen of the action is equity and attachment will not lie." From this it does not follow that to invoke equity principles in an action which addresses itself both to the legal and to the equitable powers of the court alters or restricts the statutory procedure afforded in an action the basis and essence of which is an executed contract for the direct payment of money. Goods sold and delivered, accounts stated, and promissory notes, are subjects of actions at law, and writs of attachment are unquestionably available and proper as means of securing to litigants the property of debtors which may be responsive to any judgments recovered in such cases. To hold that incidentally peering through fraud as a means of discovering and retrieving camouflaged property subject to attachment, defeats the right to the writ itself, would deny the substantial relief intended, and fortify subterfuges against legal recourse. The suggestion of such an injustice furnishes its own refutation, which cannot better be expressed than as stated in *Stanford Hotel Co.* v. *M. Schwind Co., supra.*

It is contended that petitioner had a right of appeal from an order dissolving a writ of attachment, and so was afforded a plain, speedy and adequate remedy, and that prohibition is not available in such cases. It is plain that the release of the subject matter of an attachment suit pending appeal would immediately strip the proceeding of any assurance of adequate results, since the relinquishment of the security might, and in many cases would, render the judgment worthless, even though it should be affirmed upon appeal. This proposition is settled by the following decisions of our appellate courts: *Kirby* v. *Superior Court,* 68 Cal. 604 [1 Pac. 119]; *Primm* v. *Superior Court,* 3 Cal. App. 208 [84 Pac. 786]; *White* v. *Superior Court,* 126 Cal. 245 [58 Pac. 450]; *Gloyd* v. *Superior Court,* 44 Cal. App. 39 [185 Pac. 995].

██ The only other point which we deem requires decision is the contention that since prohibition is available only to arrest proceedings which are without or in excess of jurisdiction, and will not be invoked to restrain mere error, this court has no authority to pass upon the petition herein. The respondents, however, fail to cite any authority, and we know of none, holding that the granting of a motion to release an attachment, lawfully levied, and to which one is entitled legally under our statutes, would not constitute an excess of jurisdiction. As was said in *Broom* v. *Douglass,* 175 Ala. 268 [Ann. Cas. 1914C, 1155, 44 L. R. A. (N. S.) 164, 57 South. 860]:

"By 'excess of jurisdiction,' as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked."

Petitioner was entitled to a writ of attachment. Hence, having that right, to deprive him thereof by an order dissolving or releasing it, would be a judicial act in excess of the court's jurisdiction, although it may have had general jurisdiction of the persons and subject matter of the cause. "When an asserted power is inconsistent with an established right, the power must be denied." (*Ex parte Alabama Marble Co.,* 216 Ala. 272 [113 South. 240].) Section 1102 of our Code of Civil Procedure provides for writs of prohibition in such cases.

Let the writ issue as prayed.

Works, P. J., and Thompson, J., concurred.