[L. A. No. 13874. In Bank.—May 1, 1933.]

LOGAN H. BENNETT et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

DeForrest. Home and Eugene Kelly for Petitioners.

McAdoo, Neblett & Clagett, Everett W. Mattoon, County Counsel, and S. V. O. Prichard, Deputy County Counsel, for Respondents.

SEAWELL, J.—This matter is before us on petition for hearing after decision by the District Court of Appeal, Second Appellate District, Division Two, sustaining respondent court's demurrer to the petition, and denying petitioners' petition for a writ of prohibition, by the aid of which petitioners sought to prohibit the Superior Court of the County of Los Angeles, in the case of *Logan H. Bennett and Annie H. Bennett* v. *F. P. Newport Company, a Corporation, F. P. Newport Corporation, Ltd., a Corporation, et al.*, from carrying out its threatened and declared intention of discharging, upon defendants' motion, a writ of attachment which was issued in said action at the behest of plaintiffs and directed against defendants.

Upon agreed procedure the motion was merely submitted to the court, and upon the announcement by the court of its intention of making an order discharging the attachment, petitioners applied for and obtained from said District Court of Appeal an alternative writ of prohibition restraining said Superior Court from rendering its decision as indicated. There being no decision or action of the trial court to review, this court might, in the circumstances of the case, be warranted in regarding the entire matter as presenting a moot question. In cases in which a great emergency existed, or in cases where the trial court was clearly without jurisdiction to render an adverse decision against the party petitioning for a writ of prohibition, and when such a decision would have caused a great hardship or resulted in great and irreparable injury to the applicant, this court has countenanced a procedure which speedily brought the cause to this court for immediate determination rather than required the petitioners to pursue the usual remedy provided by appeal. But the instant case does not present facts or circumstances which justify the procedural departure which this court under some unusual circumstances has indulged.

The somewhat alarming tendencies of the practice to short-cut trial courts on the way to courts of last resort on the plea that cases which in fact are but ordinary cases are causes of "first impression", or that questions of unusual importance and great moment are involved which demand that they be advanced over hundreds of other cases of the same class and grade of importance, impels us to em-

phasize, in the interest of affording equality of opportunity to all litigants to have their causes decided in the order of presentation, the necessity of a strict adherence to the rule, with a few rare exceptions, that causes be tried in the particular courts provided by the Constitution to try them, and that the procedure adopted by the legislature governing the trial of such causes be followed in every case unless some extraordinary reason requires a departure therefrom. While we have decided to entertain this petition, before entering upon a consideration of its merits, we feel that an excerpt from *Agassiz* v. *Superior Court*, 90 Cal. 101 [27 Pac. 49, 50], printed in respondent's brief, is *en rapport* with what we have said with respect to the growing tendency to have causes transferred from *nisi prius* courts, where they should be tried to courts of appeal for decision in the first instance. Many of them, no doubt, if heard in their proper forum, would not reach a court of appeal. The language of the above-cited case is so apposite to the practice herein commented upon that we feel justified in giving space to the following excerpts:

"Petitioners had the right to appeal from the order refusing to dissolve the attachment, and would have an appeal from any final judgment in the case; and such appeal being a 'plain, speedy and adequate remedy in the ordinary course of law;' within the meaning of section 1103 of the Code of Civil Procedure, prohibition does not lie. A remedy does not fail to be speedy and adequate because by pursuing it through the 'ordinary course of law' more time would probably be consumed than in the proceeding here sought to be used. And it makes no difference that in this instance a question of jurisdiction incidentally depends upon the validity of an attachment. If that were so, then in every ordinary civil action, whenever a defendant chose to raise a point of jurisdiction, either of the person or of the subject-matter, he could by prohibition stop the ordinary progress of the action toward a judgment until this court had passed upon the intermediate question; and thus this tribunal would, in innumerable cases, be converted from an appellate to a *nisi prius* court. . . .

"The substantially correct rule is stated in High on Extraordinary Legal Remedies, as follows: 'Like all other extraordinary remedies, prohibition is to be resorted to only

in cases where the usual and ordinary forms of remedy are insufficient to afford redress. And it is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists; and it is always a sufficient reason for withholding the writ, that the party aggrieved has another and complete remedy at law.' (Sec. 770.) And further, the same author says: 'Thus where the defendant in an action instituted in an inferior court pleads to the jurisdiction of such court, and his plea is overruled, no sufficient cause is presented for granting a prohibition, since ample remedy may be had by an appeal from the final judgment in the cause. Nor will the writ go to restrain an inferior court from proceeding with certain attachments upon the ground of the insufficiency of the affidavit on which the attachments were issued, since the court itself may afford relief, or the party aggrieved may resort to an appeal.' (Sec. 771.) ''

The complaint upon which the attachment issued contained three counts. The first count alleges that the F. P. Newport Corporation, Ltd., is the successor in interest of the F. P. Newport Company; that on July 8, 1924, plaintiffs entered into a written agreement whereby said F. P. Newport Company agreed to sell and plaintiffs agreed to purchase certain described lots of land, to be used for residence purposes, situate in the city of Glendale, county of Los Angeles, at the price of $4,200. It is provided by said contract of sale that the covenants, restrictions and conditions therein set forth shall inure to and bind the personal representatives, successors and assignees of the respective parties to said contract, and time is expressly made the essence thereof. Upon the execution of the contract plaintiffs paid to F. P. Newport Company the sum of $200, and agreed to pay the balance in fixed monthly installments until the entire principal sum and interest should be paid. Upon full compliance by the purchasers, the seller agreed to deliver to said purchasers a good and sufficient deed transferring said lots free and clear of all encumbrances, and to furnish a certificate showing title in the grantor to be free and clear of encumbrances. Full compliance with the provisions of said agreement on the part of plaintiffs, and a failure and refusal on the part of defendants to deliver to plaintiffs a

good and sufficient deed transferring said title free and clear of all encumbrances, or any deed whatsoever, and a failure and refusal to deliver said certificate of title showing said title free and clear of encumbrances, or to deliver to them any certificate of title, upon demand, are fully alleged.

On March 7, 1932, notice of rescission of said agreement on the ground of failure of consideration, demanding repayment of all moneys laid out and expended by plaintiffs in connection with said transaction, and offering to return and deliver back to defendants everything of value received under said agreement, was served upon defendants.

Counts two and three contain allegations of failure of consideration and refusal of defendants to grade a certain street for the benefit of said lots and install other street improvements at their own cost, and their failure to pay the principal and accruing interest on certain street improvement bonds in the sum of $134.89, the payment of which was also an obligation defendants assumed as one of the conditions of said sales agreement, but which payments, upon refusal of defendants to make them, were made by plaintiffs. It is also alleged that defendants have failed and refused to reimburse plaintiffs therefor. Each count makes exhibit C a part of said count. Exhibit C is a detailed statement setting out the moneys paid to defendants on account of the purchase price, and such other sums as were paid out on account of said improvements which defendants covenanted to pay, but failed to do so.

The prayer of the complaint is for the cancellation, termination and rescission of said agreement and for judgment in the sum of $5,414.35, with interest at the rate of seven per cent per annum on the specific monthly amounts paid by plaintiffs to defendants, and said other amounts paid on account of said street improvements by reason of defendants' default as above set forth, as by said agreement provided. Each installment and item, specific as to amounts and dates, is set forth in the prayer of the complaint.

Upon the filing of the complaint plaintiffs prepared and filed an affidavit demanding the issuance of a writ of attachment, in which it was averred that the action was founded upon an implied contract for the direct payment of money "to be repaid to plaintiffs on a rescinded contract for the sale of real property and that such contract was made or is

payable in this state, and that the payment of the same has not been secured by any mortgage or lien upon real estate or personal property, or any pledge of personal property". Thereupon a writ of attachment was issued and certain personal property belonging to defendant F. P. Newport Corporation, Ltd. (also sued as Newport Company), was levied upon. Defendant F. P. Newport Corporation, Ltd., in due time moved that the writ of attachment be dissolved on the grounds that said writ was irregularly and improperly issued, in this, to wit, that it was not issued in an action based upon a contract, express or implied, for the direct payment of money; that the causes of action set forth in plaintiffs' complaint are but different methods of pleading one transaction; that the character of each count set forth in plaintiffs' complaint is for equitable relief; that paragraph one of the complaint prays for the cancellation, termination and rescission of said agreement and for a decree adjudging it to be null and void, thereby praying for equitable relief.

In a word, it may be said that the motion is based solely upon the ground that the court was without jurisdiction to issue the attachment, inasmuch as the complaint and prayer invoke the aid of the equity side of the court. The motion coming on for hearing, the judge announced his intention to make an order discharging the attachment, but withheld his order to give plaintiffs opportunity to stay his hands by making application for the issuance of the writ of prohibition, which was accordingly issued. The District Court of Appeal, which denied the writ of prohibition, held that the complaint set forth a cause of action for equitable relief, and, under the authority of *Stone* v. *Superior Court,* 214 Cal. 272 [4 Pac. (2d) 777, 77 A. L. R. 743], and two more recent cases which lean upon *Stone* v. *Superior Court, Ingalls* v. *Superior Court,* 121 Cal. App. 453 [9 Pac. (2d) 266], and *Fair View Farms Co.* v. *Superior Court,* 123 Cal. App. 9 [10 Pac. (2d) 1011], such a complaint, even if it contains a common count for money had and received, cannot become the basis for a writ of attachment, since the cause of action is the same in both counts, and is founded upon the same facts set forth in detail.

*Stone* v. *Superior Court, supra,* involved the element of fraud and holds no more than that where the gravamen of

the complaint is *fraud* the plaintiff is not entitled to a writ of attachment, and the action is not changed where a second count is framed for money had and received if said count is based upon the same facts constituting the action on fraud. The Stone case held strictly to the rule that an action on fraud is *ex delicto,* and no implied contract for the direct payment of money, or any other honest implication, could possibly be engrafted upon a transaction that was fraudulent *ab initio.* In fact, fraud vitiates everything, and there can be no contractual relations between the defrauder and the defrauded. The transaction in the instant case is strictly one arising out of contract. No claim is made that the contract was vitiated by fraud, or that fraud entered into the transaction in the slightest degree. It is a question solely of failure of consideration. Plaintiffs paid to defendants directly a definite sum of money in consideration that defendants would convey to them by good and sufficient deed and deliver to them a certificate of title, and paid definite sums of money to protect the property from liens, which defendants under the terms of their agreement were bounden to pay, but failed to do so. The entire transaction sounds in contract. The *ex delicto* doctrine has no application to the case. This being so, is there not an implied obligation upon the defendants to return the moneys which were paid to them, and also moneys paid to the city of Glendale to prevent liens from attaching to said real property, a charge which defendants had contracted to pay?

The weight of the decisions of this state is to the effect that where the *foundation* of the action is a demand for equitable relief the attachment will not issue, but, as the authorities state, where some exercise of equitable powers, as in settling accounts and striking a balance, is incidentally involved in the action the writ will issue if the pleadings warrant it. (*Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1]; *De Leonis* v. *Etchepare,* 120 Cal. 407 [52 Pac. 718]; *Kohler* v. *Agassiz,* 99 Cal. 9 [33 Pac. 741].)

*Stanford Hotel* v. *Schwind,* 180 Cal. 348 [181 Pac. 780, 782], disposed of questions very similar to those presented in the instant case. One of the reasons assigned as grounds for discharging the attachment was that it was an action in equity. In that case the prayer of the complaint was for a temporary restraining order enjoining defendants from

selling or otherwise disposing of the property involved in the bill of sale, and that the sale be declared void, and that it be decreed that the defendant held the property charged with the payment of plaintiff's claim in the sum of $3,617.60; that the property be sold, and for further and proper relief. The court points out that in that case, as in the instant case, there was no suggestion that fraud entered into the making of the contract. In discussing whether or not an attachment would lie the court said: "If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or that it may not be one of either law or equity, or of both. Hence it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. What must be established is that the action is based upon contract, either express or implied, for the direct payment of money. It is clear that this action addresses itself to both the legal and equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment if he is seeking recovery upon the breach of such contract. . . . Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract, which is the gravamen of the action."

To the same effect are *Weintraub* v. *Superior Court,* 91 Cal. App. 763 [267 Pac. 733], and a number of other cases. The rule is established upon well-considered authority that if upon the examination of the complaint the gravamen of the action forces the conclusion that it is an action for the recovery of a specific sum of money upon a contract, express or implied, an attachment will issue regardless of the fact that the exercise of equitable powers of the court are also incidentally involved. In the instant case the suit is upon a contract, so far as the right of attachment is concerned, for the return of a specific sum of money by reason of failure of consideration.

162

The fact that plaintiffs prayed for a rescission of the agreement does not make the case exclusively one of equitable cognizance. Sections 1688, 1689 and 1691 of the Civil Code provide the methods by which an agreement may be rescinded. Plaintiffs by their act extinguished the contract and there was no occasion to invoke the equity side of the court. "The interposition of a court of equity to set the contract aside was not necessary to rescission. A contract may be rescinded by the act of the party entitled and desiring to rescind." (*McNeese* v. *McNeese*, 190 Cal. 402, 404 [213 Pac. 36, 37]; *Loaiza* v. *Superior Court*, 85 Cal. 11 [24 Pac. 707, 20 Am. St. Rep. 197, 9 L. R. A. 376].) The rescission being complete the persons rescinding are entitled to the aid of the court in securing to themselves the results and fruits of the rescission. So, too, it is settled law that where the consideration has totally failed an implied promise to repay the money paid under said rescinded agreement arises, and an action brought for the repayment is an action *ex contractu.* (*Mahony* v. *Standard Gas Engine Co.*, 187 Cal. 399 [202 Pac. 146]; *Richter* v. *Union Land Co.*, 129 Cal. 367 [62 Pac. 39].) Both of said cases hold that where there has been a total failure of consideration as to one party, the law implies a promise on the part of the other to repay what has been received by him under the contract. It is pointed out in the latter case that an attachment was proper.

*Santa Clara Valley Peat Fuel Co.* v. *Tuck*, 53 Cal. 304, is another authority directly in point as to the right of a plaintiff to an attachment after rescission for failure of consideration. See, also, generally, *Willett & Burr* v. *Alpert*, 181 Cal. 652 [185 Pac. 976]; *Doud* v. *Jackson*, 102 Cal. App. 213 [283 Pac. 107]; *Powers* v. *Freeland*, 114 Cal. App. 146 [299 Pac. 736].

We do not regard *Stone* v. *Superior Court, supra,* as being in conflict with the cases last above cited, inasmuch as the question whether an attachment will lie in an action brought after rescission to recover back money paid under a contract wherein the consideration had failed was not in that case. Any case which cites it as an authority for such a doctrine has misapprehended the real question at issue in the Stone case.

In a supplement to their brief the defendants raised for the first time the additional objection to the sufficiency of the affidavit upon which the writ of attachment was issued, that petitioners are given a vendees' lien under the provisions of section 3050 of the Civil Code, and therefore an attachment will not lie in the case. The original affidavit averred that the payment of the money demanded by the complaint had not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, as provided by section 537, subdivision 1, of the Code of Civil Procedure, but it contained no averment that the security, if any, had become valueless. Respondent relies upon *Benson* v. *Shotwell*, 87 Cal. 49 [25 Pac. 249, 681], *Gessner* v. *Palmateer*, 89 Cal. 89 [24 Pac. 608, 26 Pac. 789, 13 L. R. A. 187], *Richvale Land Co.* v. *Johnson*, 28 Cal. App. 296 [152 Pac. 312], and *Montgomery* v. *Meyerstein*, 186 Cal. 459 [199 Pac. 800], to sustain its contention that the vendees were secured by the lien upon real property given by section 3050 of the Civil Code. The question whether said vendees' lien was intended to be regarded as such property as would defeat an attachment against other property of the debtor need not be considered in this action. By a counter-affidavit filed by petitioners in the trial court at the hearing of the motion to discharge the attachment it is averred that plaintiffs held no lien, and if such a lien ever existed the same had become valueless without any act or fault of petitioners. It is also averred that any lien that may otherwise have existed is subordinate to a prior encumbrance, in that on March 8, 1925, the real property in suit was mortgaged to an encumbrancer in good faith and for value. These averments do not appear to be disputed.

That an affidavit may be amended by inserting an averment that the security has become valueless is expressly conceded in *Corum* v. *Superior Court*, 114 Cal. App. 741 [300 Pac. 837]. (Sec. 558, Code Civ. Proc.)

Whether a demurrer was filed to the complaint in the trial court or what objections, if any, were made against the complaint in the trial court does not appear. It appears to be sufficient in all respects upon its face, but if deficient in form it would be subject to amendment without disturbing the attachment.

We are of the view that the attachment should not be discharged. The writ of prohibition is granted, and the lower court is directed to deny the motion to discharge the attachment.

Waste, C. J., Tyler, J., *pro tem.*, Curtis, J., and Shenk, J., concurred.

LANGDON, J., Concurring.—I concur in the conclusion reached in this opinion, but I think it should do expressly what it does in effect, namely, overrule the case of *Stone* v. *Superior Court*, 214 Cal. 272 [4 Pac. (2d) 777, 77 A. L. R. 743]. The Stone case is, in its essential features, identical with the instant case, and the present decision destroys the former one as authority. Both are actions to recover money paid as consideration under a contract which was previously rescinded by the aggrieved party, for a ground specified in Civil Code, section 1689. The only difference between them is a wholly unimportant one; in the Stone case the *grounds* for rescission were two: fraud and failure of consideration; in the instant case, a single ground is alleged: failure of consideration. Irrespective of the grounds, the *obligation* remaining after a completed rescission is the same in each case, and it is this obligation which is sued upon, and which the court herein holds to be a proper basis for attachment. That such a result is sound cannot be doubted, and I need not here repeat the reasons discussed in my dissent in the former decision.

The Stone case laid down at least two principles which were directly in conflict with numerous decisions in this state, and were also contrary to the great weight of authority elsewhere. (See cases cited in dissenting opinion, 214 Cal. 276 [4 Pac. (2d) 777]; see, also, notes, 21 Cal. L. Rev. 130; 20 Cal. L. Rev. 541; 5 So. Cal. L. Rev. 440; 77 A. L. R. 748.) It has been followed by the District Court of Appeal, Second Appellate District, Division One, in several cases. (See *Fair View Farms Co.* v. *Superior Court*, 123 Cal. App. 9 [10 Pac. (2d) 1011]; *Ingalls* v. *Superior Court*, 121 Cal. App. 453 [9 Pac. (2d) 266]; *Ryker* v. *Lindenberg*, ▮ (Cal.

App.) [20 Pac. (2d) 763].) The appellate department of the Superior Court in Los Angeles County, in an elaborate opinion which makes an immaterial distinction, did not follow it. (*Jensen* v. *Harry H. Culver & Co.*, 127 Cal. App. (Supp.) 783 [2 Cal. Supp. 37, 15 Pac. (2d) 907].) The District Court of Appeal, Second Appellate District, Division Two, approved the decision in *Jensen* v. *Harry H. Culver & Co., supra.* (*Harry H. Culver & Co.* v. *Superior Court,* 129 Cal. App. 589 [19 Pac. (2d) 43].) This intolerable confusion has resulted from the simple fact that the Stone case, while plainly contrary to prior decisions of this court, did not expressly disapprove of such decisions, with the result that two appellate courts have felt at liberty to rely upon them. The majority opinion in the instant case relies upon these earlier decisions, but fails to disapprove of the Stone case, and hence invites further confusion. It is in the hope that this confusion may be avoided, and the rule clearly stated for the guidance of the courts of this state, that I proceed to analyze briefly the holding of the Stone case and the effect of this opinion upon the principles therein announced.

The first principle laid down in that case is that where an action is brought to recover the consideration paid under a contract, on the ground of fraud in the inducement thereof, such action "sounds in tort," notwithstanding the fact of prior rescission. The important result of this principle was that no attachment could be had in such an action. Examining this conclusion, we find that it was based largely on the case of *San Francisco Iron & Metal Co.* v. *Abraham,* 211 Cal. 552 [296 Pac. 82, 83], in which the action was based upon fraud, but no prior rescission was alleged or proved. It is clear enough that an action based upon the facts constituting the fraud is not an action on "a contract, express or implied", within the meaning of the attachment statute, despite a pleading in the form of an action for "money had and received". (*San Francisco Iron & Metal Co.* v. *Abraham, supra.*) But where a contract is entered into between the parties, and upon proper grounds the plaintiff gives notice of rescission and offers to restore the consideration he has received, it is settled by innumerable decisions that a *quasi*-contractual obligation arises on the part of the defendant to restore what he has received. This obligation comes within the meaning of "a contract, express or im-

plied", for purposes of attachment. It surely can make no difference what the grounds for rescission may have been: Fraud, mistake, duress, menace, undue influence, partial failure of consideration, total failure of consideration, breach of warranty in a contract of sale, insanity of the contracting party. (See Civ. Code, secs. 1689, 1789, 39.) Indeed, suppose the aggrieved party misconceived his case and gave notice of rescission upon an erroneous and unsupportable ground. This would not affect the validity of his rescission. (*Hull* v. *Ray*, 211 Cal. 164 [294 Pac. 700].) It is immaterial, therefore, what cause for rescission is relied upon, where the plaintiff seeks simply the recovery of his consideration. The action is not being brought upon the grounds for rescission, or upon any cause existing prior to rescission, but rather upon the new obligation which arises after the completed rescission. How can the obligation to restore the consideration be contractual in the one case and tortious in another? The majority opinion in the instant case holds that in an action upon such obligation an attachment is proper. It necessarily follows that the first rule of the Stone case is incorrect, and that the Stone case is overruled by the instant case on that point.

The second and more basic misconception of the Stone case is in the nature of rescission itself. The opinion takes the position that the allegation of completed rescission is immaterial, and implies that the action was to secure a judgment of rescission. Under this view there would be no *quasi*-contractual obligation upon which to sue, and the only cause of action would be based upon the fraud therein alleged. The necessary implication from the decision was that there could not be a rescission by the act of one party, but only an adjudication of rescission by an action brought in a competent court, and that this action was *in equity*. The result of this ruling was that actions to recover the consideration paid under a contract, after completed rescission by notice and restoration of all things received, were treated as suits in equity, jurisdiction being vested exclusively in the superior court, regardless of the amount in controversy. There is no justification in our statute or decisions for such a conclusion, as pointed out in the dissenting opinion in the Stone case, and in the majority opinion in the instant case. It follows that in so far as the Stone case suggests this con-

clusion, it is overruled by the instant case, and so are *Fair View Farms Co.* v. *Superior Court, supra, Ingalls* v. *Superior Court, supra,* and *Ryker* v. *Superior Court, supra.* The result reached in *Jensen* v. *Harry H. Culver & Co., supra,* and *Harry H. Culver & Co.* v. *Superior Court, supra,* is correct.

Preston, J., concurred.

Rehearing denied.

Shenk, J., and Langdon, J., dissented.