[Civ. No. 24522.   Second Dist., Div. One.   Oct. 18, 1960.]

GENERAL INSURANCE COMPANY OF AMERICA (a Corporation), Respondent, v. HOWARD HAMPTON, INC., et al., Defendants; C. LESLIE BURGESS et al., Appellants.

Hill, Farrer & Burrill, William McD. Miller, Calfas & Calfas and William Calfas for Appellants.

Anderson, McPharlin & Conners and Robert C. Haase, Jr., for Respondent.

WOOD, P. J.—Appeal from an order denying a motion to discharge a writ of attachment.

The writ was issued in an action based upon a written agreement of defendants whereby they agreed to indemnify the plaintiff company which had executed certain faithful performance bonds on behalf of a building contractor.

The motion was made on the ground that the issuance of the writ was improper for the reasons that (1) the action, as against the moving parties (appellants), was not one in which a writ of attachment may be issued; (2) the action is not upon a contract of the moving parties for the direct payment of money; and (3) it appears from the complaint that the indemnity agreement provides for liens in favor of plaintiff, and the affidavit for attachment does not include a statement that said liens became valueless through no fault of plaintiff.

The complaint is entitled "COMPLAINT BY SURETY TO BE FURNISHED FUNDS: FOR INJUNCTION AND TEMPORARY RESTRAINING ORDER." There are two causes of action therein.

The allegations of the first cause of action, in general, are as follows: About March 17, 1958, defendants executed, and

they delivered to plaintiff, an agreement of indemnity in writing whereby defendants agreed, in consideration of the execution by plaintiff of bonds or undertakings upon behalf of defendant Howard Hampton, Inc., to indemnify plaintiff in the respects as set forth in said agreement of indemnity. A copy of said agreement is attached to the complaint and made a part thereof. Included among the promises of defendants in said agreement is the promise that in the event plaintiff be required or deem it necessary to reserve from its assets an amount to cover any claim or claims, contingent or otherwise, under or by reason of any such bond or undertaking, or by reason of claims filed under such bond or for any reason, defendants would deposit with plaintiff, in current funds immediately upon demand, an amount sufficient to cover such reserve and such additional amounts as might be necessary to cover any increase therein, to be held by plaintiff as additional collateral security. Subsequent to the execution of the indemnity agreement, and in reliance thereon, and upon request of defendant Howard Hampton, Inc., plaintiff, as surety, executed upon behalf of defendant Howard Hampton, Inc., certain bonds.

The complaint sets forth the details regarding six bonds executed by plaintiff, such as dates of issuance, numbers, amounts, obligees, and various provisions. The provisions, in general, were to the effect that plaintiff guaranteed the faithful performance of, and payment for labor and materials furnished under, three contracts for the construction of buildings for certain school districts.

Further allegations of the first cause of action are, in general, as follows: Work under the first contract has been completed but the unpaid claims for labor and materials supplied for use upon the project are at least $29,726.72 in excess of the balance to be paid by the school district. Work under the second contract has not been completed and the school district has declared the contract in default. Plaintiff, upon demand of the district, has taken over the completion of the work as surety. The cost to complete said work and to pay outstanding claims for labor and material supplied for and used in said work will exceed the unpaid balance payable under the contract by at least $36,430.26. Work under the third contract has not been completed and the outstanding claims for labor and materials for use upon this project and the cost of completing the project exceed the unpaid balance payable under the third contract by at least $29,587.22. The

total of the aforesaid deficits now amounts to $95,744.20, and plaintiff has good reason to believe that there are other claims which will increase the deficits. By reason of claims against plaintiff by unpaid suppliers of labor and material, and of the anticipated expense of completing the aforesaid uncompleted contract, about June 10, 1959, plaintiff, in compliance with law, reserved from its assets the sum of $75,000 and, about said date, made demand upon defendants ''to put plaintiff in funds, as collateral security, to cover the said reserve. . . .'' Defendants refused to pay to plaintiff said sum or any part thereof. Plaintiff has deemed it necessary to increase, and has increased, its reserve to the sum of $150,000. Said indemnity agreement provides that defendants shall indemnify plaintiff against all costs, damages, expenses, attorney fees, and any and all liability therefor, sustained or incurred by plaintiff by reason of executing any such bonds, or incurred by reason of investigating, prosecuting or defending any action brought in connection therewith. By reason of the default of defendant Howard Hampton, Inc., in performance of the work embraced by the contract with the William S. Hart Union High School District (the school district referred to in the second contract) and by reason of the need to ascertain the nature and extent of unpaid bills against the jobs for which plaintiff will be liable, plaintiff engaged the services of its present attorneys to investigate the matter and to prosecute the action, and plaintiff has incurred and will incur an obligation to said attorneys for fees and costs.

The prayer with respect to the first cause of action (the only cause of action against appellants) is for judgment against defendants and each of them for the sum of $150,000 ''as collateral security for the payment of plaintiff's liabilities under its said bonds together with its loss, costs, expenses and attorneys' fees on account thereof, for a reasonable attorneys' fees herein and for costs of suit and such other relief as may be appropriate.''

In the second cause of action, plaintiff sought an order restraining defendants, other than appellants, from disposing of any money received by them as payment from the school districts under the contracts and to compel those defendants to pay into court such portion of $117,989.99, alleged to have been received by those defendants, as would be sufficient to pay outstanding claims for labor and material supplied under the contracts.

Appellants contend that the first cause of action (the only cause of action against appellants) is not one on which an attachment may issue. They argue that it is clear from the caption, prayer and allegations of the complaint that the first cause of action is a proceeding in equity for specific performance of the agreement of appellants to deposit collateral security and is not for money due under a contract or for damages for breach of contract; that since section 537 of the Code of Civil Procedure authorizes the issuance of a writ of attachment only in an action upon a contract, express or implied, for the direct payment of money, the action is not one in which an attachment may issue. They argue further that a contract for the deposit of money as collateral security is not a contract for the direct payment of money within the meaning of section 537.

In *Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 P. 780], there was a motion to dissolve an attachment on the ground that the action was not a proper one in which to issue an attachment. The motion was denied. In affirming the order denying the motion, it was said therein, at page 352: ''The question here is whether this action is one within the purview of subdivision 1 of section 537 of the Code of Civil Procedure. . . . The action must be one upon contract, express or implied, for the direct payment of money. If a recovery upon such a contract is the purpose of the suit, so far as the right of attachment is concerned it is immaterial whether the action be regarded as strictly legal or strictly equitable, or partly legal and partly equitable. The subdivision does not in terms prescribe that the action must be one in law, or that it may not be one in equity, or that it may not be one of either law or equity, or of both. Hence it is not necessary in order to uphold the writ of attachment to establish the proposition that the action is either legal or equitable. What must be established is that the action is based upon contract, either express or implied, for the direct payment of money. It is clear that this action addresses itself to both the legal and the equitable powers of the court. But that circumstance will not operate to deny the plaintiff a writ of attachment if he is seeking recovery upon the breach of such contract. . . . Consequently, even if such an action may properly be regarded as partially legal and partially equitable, it will make no difference. The plaintiff is nevertheless entitled to a writ of attachment by virtue of the fact that he is suing for a recovery upon the contract which is the gravamen of the action. . . .''

In *Bennett* v. *Superior Court,* 218 Cal. 153 [21 P.2d 946], it was said, at page 161: "The rule is established upon well-considered authority that if upon the examination of the complaint the gravamen of the action forces the conclusion that it is an action for the recovery of a specific sum of money upon a contract, express or implied, an attachment will issue regardless of the fact that the exercise of equitable powers of the court are also incidentally involved."

Section 2778 of the Civil Code, provides, in part: "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: 1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable; 2. . . . ."

In the present action, a copy of the indemnity agreement upon which the action is based is attached, as an exhibit, to the complaint. Paragraph "Second" of that agreement provides: "The undersigned shall indemnify, and keep indemnified, The Company [plaintiff] against all loss, cost, damages, expenses and attorneys' fees whatever, and *any and all liable therefor,* sustained or incurred by The Company by reason of having executed . . . any Such Bonds; or sustained or incurred by reason of making any investigation on account thereof. . . . *Payment of any such amounts shall be made to The Company by the undersigned as soon as The Company shall be liable therefor, whether or not it shall have paid out any portion thereof.* The undersigned agree to furnish money to the Contractor or The Company as needed for the prompt payment of labor and materials used in the performance of said contracts when and as requested to do so by The Company." (Emphasis added.) Paragraph "Twelfth" of that agreement provides: "In the event The Company [plaintiff] is required or deems it necessary to reserve from its assets an amount to cover any claim or claims, contingent or otherwise, under any Such Bond by reason of default of the undersigned Contractor, or by reason of claims filed or any dispute with the obligee under Such Bond, or for any other reason whatsoever, the undersigned covenant and agree to deposit with The Company, in current funds and immediately upon demand, an amount sufficient to cover such reserve and such additional amounts as may be necessary to cover any increases therein, to be held by The Company as additional collateral security. All collateral security held by or assigned to The Company may be used by The Company at any time in pay-

ment of any claim, loss or expense which the undersigned have agreed to pay hereby. . . .''

Paragraph ''Second'' of the agreement, as above shown, provides that appellants shall indemnify plaintiff against all loss, cost, damages, expenses and attorneys' fees and any and all liability therefor and that payment of any such amounts shall be made to plaintiff as soon as plaintiff shall be liable therefor. It is alleged in the first cause of action, in effect, that the contractor has defaulted under his contracts, and that plaintiff has become liable under the bonds, and that defendants have not paid to plaintiff the amount of such liabilities. Those allegations, construed with paragraph second of the agreement, are sufficient to bring the action within the provision of subdivision 1 of section 537 of the Code of Civil Procedure as an action upon a contract for the direct payment of money.

Appellants contend that the first cause of action is insufficient to furnish the basis for an attachment for the reason that it does not appear from the allegations thereof that plaintiff has sustained or incurred any liability in connection with jobs of the contractor ''let alone the amount thereof.'' It is alleged in the first cause of action that plaintiff executed bonds whereby it guaranteed faithful performance, and payment for all labor and material, by the contractor; that the outstanding claims for labor and materials, and the cost of completing the work, would exceed, by at least $95,744.20, the balances payable under the contracts; and that plaintiff had good reason to believe that there are other claims which will increase the amount payable. Those allegations were sufficient to show that plaintiff had incurred liability and the approximate amount thereof. The definite amount would be determinable at the trial.

Appellants contend that the court was without jurisdiction to issue the writ for the reason that it appears from the complaint that the indemnity agreement is secured by liens in favor of plaintiff, and the affidavit for attachment does not include a statement that said liens became valueless through no fault of plaintiff. Section 537 of the Code of Civil Procedure (subd. 1) provides, in effect, that a writ of attachment shall not issue (1) if the obligation sought to be enforced is secured by any mortgage, deed of trust or lien upon real or personal property, or any pledge of personal property, or, (2) if the obligation was originally so secured, unless such security has, without any act of plaintiff, become valueless.

Section 538 of the Code of Civil Procedure (subd. 1) provides, in effect, that a writ of attachment shall not issue unless an affidavit is filed with the clerk showing the facts specified in section 537 which entitles plaintiff to the writ. The affidavit filed by plaintiff herein states that the defendants are indebted to plaintiff in the sum of $150,000 "over and above all legal setoffs, and counterclaims, upon an express contract, for the direct payment of money, to-wit: an express contract for indemnity . . . and that such contract was made or is payable in this state, and that the payment of the same has not been secured by any mortgage, deed of trust, or lien upon real estate or personal property, or any pledge of personal property."

Paragraph "Fifth" of the Indemnity Agreement provides: "FIFTH: Each of the undersigned does by these presents assign, transfer and convey to The Company, as of the date of execution of any Such Bond, in connection with any Contract, for The Company's protection and use and as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any indebtedness or liability of the undersigned to The Company, whether heretofore or hereafter incurred, the following:

"(a) All right, title and interest of the undersigned in and to all machinery, equipment, plant, tools and materials which are, on the date of execution of Such Bond, or may thereafter be, about or upon the site of the work to be performed under the Contract referred to in and guaranteed by Such Bond, or elsewhere for the purpose thereof, including as well materials purchased for or chargeable to said Contract which may be in process of construction or in storage elsewhere or in transportation to said site;

"(b) All rights of the undersigned in, or growing in any manner out of, said Contract or any extensions, modifications, changes or alterations thereof or additions thereto;

"(c) All rights, actions, causes of action, claims and demands whatsoever which the undersigned or any of them may have or acquire in any sub-contract in connection with said Contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said Contract, and against any surety or sureties of any such materialman, subcontractor, laborer or other person, firm or corporation.

"(d) All right, title and interest of the undersigned in

and to any and all percentages retained by the obligee under said Contract, and any and all estimates, payments, extras, final payments and other sums that, at the time of abandonment, forfeiture or breach of said Contract or Such Bond or of the terms of this agreement or at the time of any advance, payment or guaranty by The Company for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said Contract to or on behalf of the undersigned.''

Appellants argue that it clearly appears that, by virtue of the provisions of said paragraph, plaintiff has liens with respect to machinery, equipment, tools and materials at the job sites of uncompleted jobs; and liens upon rights, actions and causes of action with respect to any subcontractor; and liens with respect to the balances due from the school districts on the various jobs. It is to be noted that said Paragraph ''Fifth'' of that agreement provides that the ''undersigned,'' that is, the indemnitors, assign, transfer and convey to the plaintiff (bonding company) *all right, title and interest of the undersigned* in and to the various things mentioned in the subdivisions (a), (b), (c), and (d) of said paragraph. It is also to be noted that it does not appear that the ''undersigned,'' the indemnitors, had any right or title or interest in any of the things; and therefore it does not appear that, by said provisions for assignment, transfer and conveyance, any thing was assigned or transferred or conveyed to the plaintiff bonding company. It therefore does not appear from the record that plaintiff has or had any interest in any machinery, equipment, tools or materials at the job sites of completed or uncompleted jobs; or that plaintiff has or had any rights, actions or causes of action with respect to any subcontractor. With respect to the balances due on the various jobs, the amount plaintiff sought by its complaint is the amount it was alleged was in excess of the balances due on the various jobs. Any lien plaintiff might have on the balances would therefore not be security for the amount plaintiff sought in the action, which, as stated, was the amount in excess of such balances. It therefore does not appear from the record that plaintiff had any liens which would preclude the issuance of the writ.

The order is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied November 15, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 14, 1960.