[Civ. No. 48537. Second Dist., Div. Four. Nov. 16, 1976.]

RUDOLPH JOHNSON, JR., Plaintiff and Respondent, v.
WILLIAM D. ALEXANDER et al., Defendants and Appellants.

## COUNSEL

Walter L. Gordon III for Defendants and Appellants.

Pollock, Rigrod & Bloom and David Alkire for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—This is an appeal by defendant-appellants, William D. Alexander, Nina B. Alexander and W&N Enterprises, Inc., a California corporation, from an order denying their motion to dissolve a writ of attachment previously obtained by plaintiff-respondent, Rudolph Johnson, Jr. We affirm.

On October 3, 1972, plaintiff Rudolph Johnson, Jr., and defendant[1] William D. Alexander entered into a written contract whereby plaintiff agreed to provide certain services for defendant in connection with the making of the feature length motion picture entitled "THE KLANSMAN." Plaintiff was to "package the production" which included financing of the film, obtaining the services of Terrance Young to direct the picture and selecting the right stars for the picture. In return for these services, plaintiff was to receive 50 percent of defendant's share in the picture with all other percentages to be mutually agreed upon necessary to complete

---

[1]Defendant hereinafter will refer to William D. Alexander unless otherwise indicated. Defendants hereinafter will include William D. Alexander, Nina B. Alexander and W&N Enterprises, Inc.

the production, and the title and screen credit of executive producer. Plaintiff provided defendant with an introduction to Mr. Young, the result of which ended in the contracting of Mr. Young to direct the picture. Mr. Young proceeded to contact and persuade Richard Burton to star in the picture. Subsequently, the film was completed and released to the general public.

Plaintiff instituted a suit against defendant in Los Angeles Superior Court, case No. C-84893, based upon defendant's refusal to pay plaintiff those sums of money due and owing to plaintiff for services rendered in connection with the "packing" of "THE KLANSMAN." This prior suit was settled pursuant to a "Settlement and Release Agreement" dated September 3, 1974. Under the agreement, defendant agreed to pay plaintiff the sum of $30,000. To-date, the sum of $12,000 has been paid to plaintiff, leaving a balance due and owing of $18,000.

Subsequently, plaintiff filed on January 13, 1975, a "First Amended Complaint for Breach of Contract and to Set Aside Fraudulent Conveyances." On the same day plaintiff also obtained, without notice or hearing, a prejudgment writ of attachment attaching the business assets of defendant W&N Enterprises, Inc., the alleged alter ego of defendant William D. Alexander. The only asset presently under attachment is real property, a house, located at 3975 Kenway Avenue in Los Angeles, California.

At a hearing on January 5, 1976, defendant's motion to dissolve the attachment was denied. The court found that: (1) the claim pursuant to the settlement agreement was based upon services rendered for a liquidated amount; (2) the plaintiff had established, by a preponderance of the evidence, that he will probably succeed at the time of trial in recovering the liquidated sum of $18,000 over and above all counterclaims and set-offs; and (3) based on the evidence introduced at the hearing, the original grounds for issuing the writ of attachment still prevailed.

Defendants urge that there was insufficient evidence to support the trial court's decision. These contentions are all aimed at the fundamental issue of whether they are entities in the category of those whose property is subject to attachment and whether the action was of the type in which attachment is proper.

It has been established that, if the court finds on the basis of the preponderance of the evidence, that grounds for the issuance of an attachment exists and that plaintiff has established the probable validity of his claim and the absence of any reasonable probability that a successful defense can be asserted by the defendant, the court shall issue the writ of attachment; otherwise, the court shall dissolve the temporary restraining order. (Code Civ. Proc., § 538.4.) Thus, it was plaintiff's burden at the hearing on January 5, 1976, to demonstrate that this case was one in which an attachment was allowable and that his claim was probably valid.

We conclude that plaintiff has met these burdens. At the hearing plaintiff demonstrated that the writ of attachment was based on his services previously rendered to defendants in connection with the production of "THE KLANSMAN." It was undisputed by defendants that the first amended complaint was based upon the breach of the settlement and release agreement, which settled a prior lawsuit that was based upon the nonpayment of plaintiff for services rendered to the defendants. Further, nowhere in the record does defendant William Alexander contend that he was not satisfied with the caliber of the director or the main star obtained for the production of the picture. Defendant is merely seeking to escape his legal obligation to compensate plaintiff based on a very technical reading of their contract. This we will not allow, especially in light of the fact that defendant received everything he had bargained for in his contract with plaintiff. It is clear that it was plaintiff's introduction of defendant to Mr. Young which led to the eventual signing of Young to direct the picture. Mr. Young's signing in turn led to the signing of Richard Burton to star in the film and to the film's eventual production. Under these circumstances, to assert that plaintiff did not fulfill his part of the bargain, merely because he did not personally contact Burton or Marvin, is to assert form over logic.

If defendants' motion to dissolve the attachment were allowed, this would enable defendant William Alexander to escape liability for his breach of the contract. Under defendants' theory, a plaintiff could sue a defendant under a claim giving rise to a right of prejudgment attachment; the defendant could then settle the claim and agree to pay plaintiff the money owed to him; the action giving rise to the attachment would be dismissed; then the defendant could default on his obligation to make payments under the settlement agreement, and contend that plaintiff is not entitled to obtain a writ of attachment in an action brought to enforce a settlement agreement. By following these steps, a defendant

would be able to avoid the attachment when in reality the basis of plaintiff's claim was not the settlement agreement giving rise to the second lawsuit, but the circumstances that initially led to the existence of that agreement. It has been frequently held that the legality of the attachment must be determined from the pleadings, proceedings and entire record in the attachment suit to ascertain therefrom what, in fact, the real grievance is for which relief is sought. The question is not what plaintiff has pleaded, but what in truth and in fact is his grievance. (*Samuels* v. *Superior Court,* 276 Cal.App.2d 264, 267 [81 Cal.Rptr. 216].)

Based on the foregoing reasons, we concur with the trial court's finding that the instant attachment was indeed based on services rendered by plaintiff to defendant in the production of the picture.

■ Defendants next contend that, even if the claim was properly based on services rendered, the writ was still improperly issued because the claim was not for a liquidated amount. Defendants assert that a claim is not liquidated where there is a legitimate argument regarding the extent of the obligation. In support of this contention, defendants assert that two set-offs exist in the amount of $10,000. We do not agree. Substantial evidence exists to support the trial court's finding that this action is for a liquidated sum of $18,000 based on services rendered by plaintiff. The settlement agreement sued upon by plaintiff herein provides for the payment to him of $30,000. Prior to the filing of the first amended complaint, $10,000 of this amount was paid to plaintiff. After plaintiff obtained the attachment order, defendant William Alexander made a further $2,000 payment to plaintiff at a meeting in January 28, 1975, in partial satisfaction of his obligation under the settlement agreement. It is relevant to note that at no time during this meeting did defendant deny his obligation to pay the money to plaintiff. This evidence of partial satisfaction of a claim was admissible at the hearing to prove the validity of the claim since no question was raised as to its validity. (Evid. Code, § 1152, subd. (b)(1).) Further, defendants cite no authority for the proposition that set-offs render a claim unliquidated within the meaning of Code of Civil Procedure section 537.1, subdivision (a).

Notwithstanding the above, if defendants can establish by a preponderance of the evidence that it is reasonably probable that they will assert a successful defense, the writ will not issue. (See Code Civ. Proc., § 538.4.) ■ Defendants allege in their opening brief that there is a reasonable "possibility" of asserting a successful defense based on the

theories of "failure of consideration" or "failure of a condition precedent." These theories were based on the fact that the prior lawsuit was not dismissed until a few months after the signing of the settlement agreement and that plaintiff's attorneys threatened to reinstate a lawsuit against Paramount Pictures. The insubstantiality of this contention is demonstrated by the fact that defendants offer *no* evidence that plaintiff acted wrongly in dismissing the suit when he did or that they suffered any harm from plaintiff's waiting a few months before dismissing the prior action. Plaintiff further testified that neither during a telephone conversation between him and defendant in November 1974 nor during the January 28, 1975 meeting did defendant ever mention to plaintiff that he was having problems because the prior action had not been dismissed.

Moreover, a delay of a few months does not amount to a "failure of consideration" under the circumstances of the instant case. ■ *Delay* in performance is a material failure only if *time is of the essence,* i.e., if prompt performance is, by the express language of the contract or by its very nature, a vital matter. (*Henck* v. *Lake Hemet Water Co.,* 9 Cal.2d 136, 143 [69 P.2d 849], 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 585 at p. 502.) When no time is specified for the doing of an act, other than the payment of money, a demand for performance is necessary to put the promissor in default. (*World Sav. & Loan Assn.* v. *Kurtz Co.,* 183 Cal.App.2d 319, 326 [6 Cal.Rptr. 665]; Civ. Code, § 1491.)

■ On the face of the settlement agreement, there was no stipulation as to when the lawsuit was to be dismissed, but only that it be dismissed. The lawsuit was dismissed by plaintiff in May 1975. The agreement did not put plaintiff on notice that time was of the essence, nor did defendants at any time demand that plaintiff dismiss the suit. Thus, in the absence of any showing that the time of dismissal was so unreasonable as to render the settlement agreement so oppressive or result in injury to the defendant, the court's finding that the time was reasonable will not be disturbed. It is not the province of this court to reweigh the evidence or to read into the agreement anything the parties failed to provide for themselves.

■ Defendants' final contention is that the remedy of attachment cannot be used to seize those assets not used in defendants' business. In support of this contention, defendants assert that the Kenway property was a private residence and that it was never involved in the business of W&N Enterprises, Inc. While we are in agreement with defendants' general contention, the evidence contained in the record of the January

5, 1976, hearing indicates that the Kenway property was, in fact, an asset of W&N Enterprises, Inc., at the time the writ of attachment originally issued. By a grant deed dated June 11, 1974, William and Nina Alexander conveyed the Kenway property to W&N Enterprises, Inc. The writ of attachment was issued on January 13, 1975. By a corporate grant deed dated January 31, 1975, W&N Enterprises, Inc. reconveyed the Kenway property back to Nina Alexander. These documents conclusively establish that the Kenway property was a corporate asset at the time the writ was levied.

Code of Civil Procedure section 537.3, subdivision (a) expressly authorizes the attachment of *all* corporate property. This section provides that all property of a corporation is subject to levy of a writ of attachment, since all such property is necessarily devoted to business use and has been contributed by the owners of the business entity as a trust fund for creditors of the enterprise.

■ We further affirm the trial court's finding that the original grounds on which the attachment was based still prevail, i.e., there is still a substantial danger that the defendants would transfer, other than in the ordinary course of business, remove or conceal the property sought to be attached. (See Code Civ. Proc., § 538.5.) In support of this conclusion, we point to a few indicators of defendants' intentions, to wit: (1) defendant Nina Alexander's testimony that the transfer of title of the Kenway property to her was made to avoid any possible attachment on the residence; (2) defendant's failure to take advantage of a viable alternative to the instant attachment, i.e., the posting of an undertaking pursuant to Code of Civil Procedure sections 544 and 555; (3) defendant's failure to move for an order of preference should the attachment remain; and (4) defendant William Alexander's testimony that he may have indicated that he might take any means to protect himself if a reasonable settlement could not be reached. An inference can be drawn from these circumstances reasonably to indicate that dissolution of the attachment would not be appropriate in the instant case.

The order is affirmed.

Dunn, J., and Jefferson (Bernard), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 27, 1977.