**The UNITED STATES, Plaintiff,**

v.

**Saul MIZRAHIE and Safeco Insurance Company of America, Defendants,**

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant-Third-Party Plaintiff,**

v.

**Rebecca MIZRAHIE, Third-Party Defendant.**

**Court No. 83–8–01189.**

United States Court of International Trade.

March 19, 1985.

cated in the State of California, owned by third-party defendant, Rebecca Mizrahie. Upon due consideration and examination of Safeco's application and supporting affidavits, on March 8, 1985, this Court ordered that the Clerk of the Court issue a writ of attachment.

This is the first case before this Court in which a private party has requested, and has been granted a writ of attachment prior to judgment.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch (Jerry P. Wiskin, New York City), for plaintiff.

Marks & Brooklier, Beverly Hills, Cal. (Anthony P. Brooklier, Beverly Hills, Cal.), for defendant, and third-party defendant.

Hart & Hume, New York City (Mark S. Gamell, New York City), for defendant-third-party plaintiff.

## MEMORANDUM OPINION

RE, Chief Judge:

The question presented in this case is whether a surety seeking indemnification on an import bond, pursuant to 28 U.S.C. § 1583 (1982), may obtain a writ of attachment against an indemnitor's real property located in California. This Court holds that it is empowered to issue a writ of attachment affecting property located in California, and that the requirements of California law, for the issuance of the writ, have been met.

On March 6, 1985, defendant-third-party plaintiff, Safeco Insurance Company of America (Safeco), sought an *ex parte* right to attach order, and the issuance of a writ of attachment affecting real property, lo-

## FACTS

On August 18, 1983, September 29, 1983, and July 17, 1984, pursuant to 28 U.S.C. § 1582(2) (1982), plaintiff, the United States, instituted three separate actions in this Court, U.S.C.I.T. Nos. 83–8–1189, 83–9–1385, and 84–7–990, against Saul Mizrahie and Safeco. On February 19, 1985, the Court issued an order consolidating all three actions into one action bearing consolidated court number 83–8–1189. In each of these actions, the United States seeks to recover liquidated damage penalties against Saul Mizrahie for his alleged violations of 19 C.F.R. § 12.80, which governs the importation of vehicles that do not conform to federal motor vehicle safety standards, and against Saul Mizrahie and Safeco for breach of three Immediate Delivery and Consumption Bonds (bonds or consumption bonds).[1] The relief sought by the United States is the recovery of $43,811 in liquidated damage penalties, plus pre-judgment interest from the date of each liquidated damage assessment made by the Customs Service.

The imported merchandise consisted of various models of Mercedez Benz automobiles (vehicles) which were entered, on separate occasions, at the port of Long Beach, California. On each occasion, the vehicles, which did not conform to federal motor

---

1. Pursuant to 19 C.F.R. § 12.80(e), vehicles that do not conform to federal motor vehicle safety standards may not be released unless a surety bond, equal to the value of the vehicle plus estimated duties and taxes, is posted with the Customs Service. The release of the bond is conditioned upon obtaining a statement from the National Highway Traffic Safety Administration, stating that the vehicle has been brought into conformity with all applicable safety standards. *Id.* If the statement is not obtained and the vehicle not redelivered, liquidated damages in the amount of the bond shall be assessed. *Id. See also* 19 C.F.R. § 113.14.

vehicle safety standards, were conditionally released to Saul Mizrahie. As a condition of each vehicle's release, Mizrahie was obligated, within ninety days, either to provide a satisfactory statement that the vehicles had been altered to conform to federal safety standards, or to redeliver the nonconforming vehicles. As security for any liquidated damage penalties that might be incurred for failure to perform his obligations, Mizrahie executed, jointly with Safeco as surety, the three consumption bonds that form the basis of Safeco's cross and third-party claims.

Alleging that Saul Mizrahie neither provided satisfactory statements of conformity, nor redelivered the vehicles within ninety days after their respective releases, the Customs Service, on June 2, 1978 and March 30, 1979, assessed liquidated damages against him. Saul Mizrahie then petitioned for, and was denied, mitigation of the assessment of liquidated damage penalties. Plaintiff, the United States, subsequently brought the three actions against Saul Mizrahie and Safeco.

In each of the three actions Safeco interposed an answer, and cross-claimed for judgment against Saul Mizrahie based upon the common law right of a surety to indemnification from its principal, and upon a written General Agreement of Indemnity, dated June 26, 1977 (Indemnity Agreement). The Indemnity Agreement was executed by Saul and Rebecca Mizrahie, in favor of Safeco.

Pursuant to Rule 4(d) of the Rules of this Court, Rebecca Mizrahie was personally served with a third-party summons and complaint on December 13, 1983 and November 9, 1984. To date, Saul Mizrahie, who has appeared and answered in these actions, has not served an answer to the cross-claims of Safeco as required by Rule 7(a) of the Rules of this Court. Rebecca Mizrahie has neither appeared, nor served an answer to Safeco's third-party complaint. ·

2. Since defendants Saul Mizrahie and Safeco requested and were granted an extension of time until March 21, 1985, to respond to the

On January 31, 1985, the United States moved for summary judgment against Saul Mizrahie and Safeco.[2] On March 6, 1985, Safeco moved *ex parte*, pursuant to Rule 64, for a "right to attach order" and for the issuance of a writ of attachment, contending that, since Saul and Rebecca Mizrahie are in default as to Safeco's claims against them, they are liable to Safeco for any judgment which may be obtained by the United States against Safeco.

The following questions were presented by Safeco's application for the issuance of a writ of attachment:

1. Whether this Court is empowered to order the issuance of an *ex parte* writ of attachment affecting property located in the State of California; and

2. Whether Safeco has satisfied the requirements, under California law, for the issuance of an *ex parte* writ of attachment.

For the reasons that follow, the court has granted Safeco's *ex parte* application for a right to attach order and a writ of attachment.

### Jurisdiction

With the enactment of the Customs Courts Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727 (1980), Congress expanded and clarified the jurisdiction of this Court to create "a comprehensive system for judicial review of civil actions arising out of import transactions and federal statutes affecting international trade." Statement of President Carter, 16 Weekly Comp. of Pres. Doc. 2183 (Oct. 11, 1980). *See* H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 18–20 (1980), U.S.Code Cong. & Admin.News 1980, p. 3729.

Pursuant to 28 U.S.C. § 1582, this Court was granted exclusive subject-matter jurisdiction over civil penalty actions under sections 592, 704(i)(2), and 734(i)(2) of the Tariff Act of 1930, and over actions "to recov-

United States' motions for summary judgment, the motions for summary judgment are still pending.

er upon a bond relating to the importation of merchandise" required by federal law or Treasury regulations. 28 U.S.C. § 1582. In addition, pursuant to 28 U.S.C. § 1583, the Court of International Trade has exclusive jurisdiction over any counterclaim, cross-claim, or third-party action of any party to recover on a bond related to the importation of merchandise that is the subject of the civil action. *Id.* § 1583.

An examination of the legislative history of the Customs Courts Act of 1980 sheds considerable light on these sections. As originally introduced, the predecessor bill to the 1980 Act, H.R. 6394, did not provide for cross-claims and third-party actions arising out of suits by the United States to recover on a bond. *See* H.R. 6394, 96 Cong., 2d Sess., 126 Cong.Rec. 1530 (1980). Under that proposal, an aggrieved surety who wished to recover for breach of contract against the principal would have been required to bring a separate action in a federal district court or in a state court. After hearings on the bill, it became clear that it would be preferable to allow all claims arising out of an underlying import transaction to be adjudicated in one action before the Court of International Trade. *See* H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 37–38 (1980). Accordingly, the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary, amended the proposed section 1583 to authorize the assertion of any counterclaim, cross-claim or third-party action of any party in an action to recover on the bond. *Id.* at 38. Section 1583, therefore, as enacted, manifests clearly the intent of the Congress to have the rights of all of the parties adjudicated fully and completely in one action before the Court of International Trade. *See id.* at 50–51.

■ Since Safeco's cross-claim and third-party action seek indemnification on a bond required by Treasury regulations, this action falls squarely within section 1583. The defendant, Saul Mizrahie, and third-party defendant, Rebecca Mizrahie, were both duly served with process in this action. Thus, it is clear that this Court possesses subject-matter and personal jurisdiction over the parties.

### The Court's Equitable Powers

Of equal significance to the Court's expanded jurisdiction in the 1980 Act was Congress' explicit conferral upon the Court of International Trade of "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1982). Thus, the Act granted this Court "remedial powers co-extensive with those of a federal district court." H.R.Rep. No. 96–1235, 96th Cong., 2nd Sess. 61 (1980), U.S.Code Cong. & Admin.News 1980, p. 3773. *See also Budd Co. Ry. Div. v. United States,* 1 CIT 175, 176–78 (1981). With certain limited exceptions, not relevant here, Congress authorized the Court "to order *any form of relief that is appropriate in a civil action,* including, *but not limited to,* declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c) (emphasis added). *See also* 28 U.S.C. § 1651 (1982); *Alberta Gas Chem., Inc. v. United States,* 85 Cust.Ct. 122, 125, C.R.D. 80–13, 496 F.Supp. 1332, 1334–36 (1980). The legislative history of the Customs Courts Act of 1980 leaves no doubt that 28 U.S.C. § 2643(c)(1) "is a general grant of authority for the Court of International Trade to order any form of relief that it deems appropriate under the circumstances." H.R. Rep. No. 96–1235, 96th Cong., 2nd Sess. 61 (1980), U.S.Code Cong. & Admin.News 1980, p. 3772.

Decisions of this Court and the Court of Appeals for the Federal Circuit teach that, in cases in which jurisdiction has been established, this Court has the power to grant preliminary injunctive relief in order to preserve the status quo until a final judgment is rendered. *See, e.g., Zenith Radio Corp. v. United States,* 710 F.2d 806, 809–10 (1983); *S.J. Stile Assoc. Ltd. v. Snyder,* 68 C.C.P.A. 27, 29–30, C.A.D. 1261, 646 F.2d 522, 525 (1981); *Ceramica Regiomontana, S.A., v. United States,* 7 CIT ——, 590 F.Supp. 1260, 1263 (1984); *Amer-*

*ican Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 298–300, 515 F.Supp. 47, 52–53 (1981); *Associated Dry Goods Corp. v. United States*, 1 CIT 306, 309, 515 F.Supp. 775, 778 (1981).

Federal Rule of Civil Procedure 64, which governs the district courts, provides that provisional remedies, including attachment, "for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy was sought...." Fed.R.Civ.P. 64.

■ The language of Rule 64 of the Rules of this Court, which implements this Court's statutory authority under 28 U.S.C. § 1585 and § 2643(c)(1), is substantially similar to Fed.R.Civ.P. 64. Rule 64 of this Court provides that provisional remedies, such as attachment, are available in accordance with "appropriate state law existing at the time the remedy is sought." Although the Federal Rules of Civil Procedure expressly apply only to the federal district courts, it has been held that, where substantially similar, they provide guidance in the interpretation of the rules of this Court. *See United States v. Porter*, 68 C.C.P.A. 15, 20, C.A.D. 1259, 645 F.2d 52, 57 (1981). Thus, in support of this Court's jurisdiction and to effectuate its judgment, the Rules of this Court permit the attachment of property, prior to judgment, in accordance with, and to the extent permitted by state law. In considering the application for attachment, since the property sought to be attached is real property located in the State of California, the applicable law is the law of California.

■ It should be emphasized that the issuance of a writ of attachment in this case in no way threatens the jurisdiction of any state. The territorial jurisdiction of this Court is national in scope. Furthermore, the equitable power of the court to attach property for the purpose of securing a judgment is coextensive with the equitable power of a district court. *See* H.R.

Rep. No. 96–1235, 96th Cong., 2nd Sess. 61 (1980); U.S.C.I.T. Rule 64; Fed.R.Civ.P. 64. Moreover, a writ of attachment will issue only in conformance with state law. U.S.C. I.T. Rule 64; Fed.R.Civ.P. 64.

It is well to note that, although the "offices" of this Court are located in the State of New York, trials and other proceedings may be held at "any place within the jurisdiction of the United States." 28 U.S.C. § 256 (1982). *See* U.S.C.I.T. Rule 77(c)(2). *See generally* Re, *Litigation Before the Court of International Trade*, 19 U.S.C.A. vii, x (Supp.1984). It is also noteworthy that the effective reach of the court's process extends throughout the entire United States. *See* U.S.C.I.T. Rule 4. Consequently, if deemed necessary and appropriate, the proceedings in this action could be conducted or transferred to a United States courthouse located in California. Indeed, if the defendants, upon being served with the writ in this case, were to move to vacate the attachment, if it were deemed necessary, the chief judge of the Court could order that these proceedings be held in California. *See Shannon Luminous Materials Co. v. United States*, 69 Cust.Ct. 317, 318–20, C.R.D. 72–21 (1972).

■ The comprehensive statutory scheme which established this Court and its jurisdiction, clearly requires that the Court of International Trade resolve disputes within its subject matter jurisdiction regardless of the state in which the dispute arose. Since the Court, like its predecessor, the United States Customs Court, is a court of national jurisdiction, it is axiomatic that it may exercise its jurisdiction in cases properly before it in any of the fifty states. *See* 28 U.S.C. § 256 (1982); S.Rep. No. 96–466, 96 Cong., 1st Sess. 3, 15 (1979); *Customs Court: Hearings on S.2624 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary*, 91st Cong., 1st Sess. 1 (1969) (statement of Senator Hruska).

In order to effectuate the statutory responsibilities of the Court's nationwide subject-matter jurisdiction, Congress enacted

sections 569(a), 751(f), and 1963A of Title 28 to enable this Court to be physically present "at any place within the jurisdiction of the United States." Section 569(a) provides that the United States marshal for each district, except for the Southern and Eastern Districts of New York, is the marshall of the Court of International Trade when the Court is holding sessions in that district. 28 U.S.C. § 569(a) (Supp.1984). Section 751(f) provides that the clerk of any district in which the Court of International Trade is sitting, except the Southern and Eastern Districts of New York, shall upon the request of the chief judge of this Court, and with the approval of the district court, act as the clerk of this Court "for all purposes relating to the civil action then pending before such court." 28 U.S.C. § 751(f) (1982). Pursuant to section 1963A, a final judgment entered by the Court of International Trade may be registered in any judicial district, and shall have the same effect and be enforced in the same manner as a judgment of the district court. 28 U.S.C. § 1963A (1982).

 Since this Court's jurisdiction under 28 U.S.C. § 1583 is exclusive, a surety seeking indemnification from the principal for breach of the terms of a consumption bond must seek redress before the Court of International Trade. If the preliminary relief sought by Safeco were not available in this Court, it is likely that it would not be available in any other, since all other courts are barred from entertaining Safeco's claims. *Id.* In providing for exclusive jurisdiction over cross-claims and third-party actions on import bonds, the Congress intended to foster judicial economy, and afford the parties an effective and complete remedy. *See, e.g.,* H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 61 (1980). Therefore, it is clear that, with the passage of the 1980 Act, Congress provided this Court with the full legal and equitable power to grant complete relief to all parties to an action properly before it, regardless of where the action arose.

 Consequently, this Court has both the exclusive jurisdiction and the necessary equitable power to issue a writ of attachment, prior to judgment, in an action to recover on a consumption bond. *See* 28 U.S.C. §§ 1583; 1585. This equitable power is implemented by U.S.C.I.T. Rule 64, which authorizes the issuance of a writ of attachment in accordance with state law. The inability or refusal to issue a writ could render any judgment obtained by Safeco in this Court ineffective and a nullity. Such an anomalous result would frustrate Congress' firmly expressed intent to afford all parties to an import transaction access to a tribunal that could grant an appropriate remedy and do complete justice.

The case of *United States v. Gold Mountain Coffee, Ltd.,* 8 CIT ——, 597 F.Supp. 510 (1984) is not authority contrary to the court's holding in this case. In that case, the plaintiff, the United States, had seized certain coffee beans imported and stored in California, pursuant to a warrant of arrest under 28 U.S.C. § 2461(b) (1982), purportedly in furtherance of 18 U.S.C. § 545 (1982) and 19 U.S.C. § 1592 (1982). On the defendant's motion, the court quashed the warrant, and held that the court lacked subject-matter jurisdiction under 18 U.S.C. § 545, and that the judicially ordered forfeiture of the merchandise was not warranted under 19 U.S.C. § 1592. *Gold Mountain Coffee, Ltd., supra,* ——, 597 F.Supp. at 515, 516. Section 1592(c)(5), the court concluded, contains specific statutory standards for the forfeiture of property by the government under section 1592, which were not satisfied in that case. Nevertheless, the court specifically noted the availability of other pre-judgment remedies under Rule 64. *Id.* at —— n. 11, 597 F.Supp. at 516. In contrast, Safeco's claims, in this application, pursuant to section 1583, are based upon contract, for which traditional legal and equitable remedies are available.

*The Issuance of a Writ of Attachment Under California Law*

As discussed previously, since the property sought to be attached in this action is real property located in the State of Cali-

fornia, California law governs Safeco's right to an attachment. U.S.C.I.T. Rule 64.

Under California law, the provisional remedy of prejudgment attachment is statutory, and is designed to ensure the collectability of a judgment by limiting the defendant's control of his assets until plaintiff obtains judgment. Pursuant to Section 483.010 of the California Code of Civil Procedure (C.C.P.), a writ of attachment may be issued:

> [O]nly in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees.

C.C.P. § 483.010(a). Under the prior version of C.C.P. § 483.010, it has been held that an attachment could properly issue in an action brought by a surety against its indemnitors. *See General Insurance, Co. of America v. Howard Hampton, Inc.*, 185 Cal.App.2d 426, 8 Cal.Rptr. 353 (1960).

■ Clearly, since Safeco's claim against the Mizrahies is based upon a contract of indemnity, seeks money only, and is in an amount that exceeds five hundred dollars, Safeco's application meets the requirements of C.C.P. § 483.010(a).

Under the present California statute, no right to attach order or writ of attachment may be obtained *ex parte* "unless it appears from the facts shown by affidavit that great or irreparable injury would result ... if issuance of the order were delayed until the matter could be heard on notice." C.C.P. § 485.010(a). This statutory language was the result of the California Supreme Court's decision in *Randone v. Appellate Dept. of Sup. Ct. of Sacramento County*, 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971), *cert. denied*, 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1972), in which California's prior attachment statute was declared unconstitutional.

In *Randone*, a collection agency, without notice, attached the checking account of the petitioners. The collection agency was the assignee of a law firm, to which the petitioners owed $490 for services rendered, plus $130 in accumulated interest. The California Supreme Court found that the statute, permitting attachment of any property of a debtor, including necessities of life, without prior hearing or notice, violated the constitutional guarantee of due process. The court held that notice could be dispensed with only in "extraordinary circumstances," otherwise the statute would be unconstitutional on its face. *Id.* at 563, 96 Cal.Rptr. at 728, 488 P.2d at 32.

The *Randone* court relied on the United States Supreme Court's decision in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), which voided a Wisconsin prejudgment wage garnishment statute, and held that the statute, since it sanctioned the taking of property without prior notice, violated procedural due process. The California Supreme Court found that *Sniadach* "returned the entire domain of prejudgement remedies to the long standing procedural due process principle which dictates that, *except in extraordinary circumstances*, an individual may not be deprived of his life, liberty or property without notice and hearing." 5 Cal.3d at 547, 96 Cal.Rptr. at 715, 488 P.2d at 19 (emphasis added). Thus, since the California statute in *Randone* was not sufficiently limited, it was held to be invalid.

The *Randone* court also noted that *Sniadach* referred to only three circumstances that would be sufficient to satisfy the requirement of "extraordinary circumstances." These circumstances were stated to be (1) summary procedures permitting specialized governmental officers to react to financial difficulties at a particular bank by seizing operational control of its assets; (2) summary seizure of misbranded drugs; and (3) prejudgment attachment of property of a non-resident by a resident creditor. 5 Cal.3d at 553–54, 96 Cal.Rptr. 720–21, 488 P.2d at 24–25; *see Ewing v. Mytinger and Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Fahey v. Malonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed.

2030 (1947); *Coffin Bros. v. Bennett,* 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). The *Randone* court further stated that a constitutionally valid statute could be drafted "to permit attachment before notice in exceptional cases where, for example, the creditor can additionally demonstrate ... that an actual risk has arisen that assets will be concealed or that the debtor will abscond." *Id.,* 5 Cal.3d at 563, 96 Cal.Rptr. at 727, 488 P.2d at 31 (citations omitted); *see also People v. Allstate Leasing Corp.,* 24 Cal.App.3d 973, 101 Cal.Rptr. 470 (1972).

As a result, and in response to the *Randone* decision, section 485.010(b) now provides that the requirement of showing great or irreparable injury is satisfied only if it is established that:

> (1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.

C.C.P. § 485.010(b)(1).

In *Johnson v. Alexander,* 63 Cal.App.3d 806, 134 Cal.Rptr. 101 (1976), the Second District Court of Appeal reviewed C.C.P. § 585.5, the predecessor of section 485.010, and found that the grounds on which an original pre-notice attachment had been based remained valid, and affirmed a lower court decision denying dissolution of the attachment. The court also noted that there remained "a substantial danger that the defendants would transfer, other than in the ordinary course of business, remove or conceal the property sought to be attached." *Id.* at 814, 134 Cal.Rep. at 106.

Hence, a court must examine the application for a right to attach order and supporting affidavit to determine whether it complies with the following requirements of section 485.220(a):

> [A] right to attach order, which shall state the amount to be secured by the attachment, and order a writ of attach-

ment to be issued upon the filing of an undertaking ..., if it finds all of the following:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.

> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.

> (3) The attachment is not sought for a purpose other than the recovery upon the claim upon which the attachment is based.

> (4) The affidavit accompanying the application shows that the property sought to be attached, or the portion thereof to be specified in the writ, is not exempt from attachment.

> (5) The plaintiff will suffer great or irreparable injury (within the meaning of Section 485.010) if issuance of the order is delayed until the matter can be heard on notice.

*Id.*

In this case, Safeco moved *ex parte* for a right to attach order, and alleged in its application and supporting papers that there was a danger that the property sought to be attached "would be concealed, impaired in value or made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice."

In support of Safeco's allegation of irreparable injury, the court was furnished with several documents which indicated a potential for "great or irreparable injury" to Safeco. The first document was Saul and Rebecca Mizrahies' statement of financial condition as of July 11, 1977, given to Safeco by the Mizrahies in connection with the issuance of the bonds and indemnity contract at issue. This statement reflects a net worth exceeding three million dollars ($3,000,000), and includes a list of real and other property held by the Mizrahies at that time. Since the dates of the assessments for which the United States brought suit, the Mizrahies have transferred or liquidated their interest in all the property listed in their statement except for the real

property located at 6130 Warner Drive, Los Angeles, California. A copy of an Individual Quitclaim Deed from the Los Angeles County Recorder's office reveals that on January 13, 1981, subsequent to the assessment of the liquidated damage penalties underlying this action, Saul Mizrahie transferred record ownership of that property to his wife, Rebecca. It is alleged by Safeco that Rebecca Mizrahie is still record owner of that property, and that it is apparently the Mizrahies' present residence.

The court was also furnished with a copy of an indictment dated January 23, 1985 in "*U.S. v. Saul Mizrahie,*" Criminal Case No. 8500586, currently pending in the United States District Court, Southern District of California. The indictment charges Saul Mizrahie with three counts of concealing merchandise imported contrary to law, in violation of 18 U.S.C. § 545 (1982). The merchandise, which is the basis of the indictment, is unrelated to the subject matter of this action. Safeco also states that Saul Mizrahie has petitioned the district court for permission to proceed *in forma pauperis* in that criminal action, and that he claims to have no assets.

In light of these overwhelming indications of the Mizrahies' severe financial and legal distress, and their failure to answer Safeco's cross and third-party claims, there is a substantial likelihood that Rebecca Mizrahie would transfer their last significant remaining asset, the Los Angeles house. A grand jury has found sufficient evidence to indict Saul Mizrahie for knowingly and willfully concealing merchandise that he knew was imported contrary to law. All other assets of the Mizrahies have disappeared. If title to the Los Angeles house is transferred, Safeco will suffer "irreparable injury" in that it will be unable to collect a judgment against the Mizrahies. In view of the foregoing, it is the determination of the Court that the statutory requirements of section 485.010, as well as the constitutional requirement of "extraordinary circumstances" for issuance of the writ, have been met. *See Johnson v. Alexander,* 63 Cal.App.3d 806, 814, 134 Cal. Rptr. 101, 106 (1976); *Randone v. Appel-*

*late Dept. of Sup. Ct. of Sacramento,* 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971), *cert. denied,* 407 U.S. 924, 92 S.Ct. 2452, 32 L.Ed.2d 811 (1972).

■ As for the validity of Safeco's claim, the Mizrahies have defaulted on Safeco's cross and third-party claims. Assuming, therefore, that the government succeeds on the merits, it appears likely that Safeco will be found liable to the government on the consumption bonds. Under California law a written agreement of indemnity is fully enforceable, and may entitle the indemnitor to costs and attorney's fees incurred in prosecuting the indemnification claim. *See, e.g., DeWitt v. Western Pacific R.R. Co.,* 719 F.2d 1448, 1453 (9th Cir.1983); *Schackman v. Universal Pictures Co.,* 255 Cal.App.2d 857, 863, 63 Cal.Rptr. 607 (1967). Since the indemnity agreement in this case was executed in California, and is governed by California law, the Court in issuing the writ determined that Safeco's probability of success on the merits was considerable.

It should be noted that the effect of the writ issued against the Mizrahies' Los Angeles property is only to prevent its transfer prior to judgment, and does not affect their right to possession. In addition, in accordance with the provisions of C.C.P. §§ 489.210 and 489.230, Safeco posted an undertaking in the amount of one hundred thousand dollars ($100,000) to secure payment of any judgment the Mizrahies might recover for the wrongful attachment of their property by Safeco.

■ Thus, the Court determined that the requirements mandated by California law for the issuance of an *ex parte* writ of attachment were met by Safeco's application in that:

1. Safeco's claim upon which the attachment is based is for money only and more than five hundred dollars;

2. Safeco established the probable validity of its claim;

3. Safeco's attachment was not sought for a purpose other than securing Safeco's recovery on its claims;

4. Safeco's affidavit showed that the property sought to be attached was not exempt from attachment under C.C.P. § 487.020, and is subject to attachment under C.C.P. § 487.010; and

5. Safeco showed that it would have suffered great or irreparable injury, within the meaning of C.C.P. § 485.010, if issuance of the order was delayed until the matter could have been heard on notice.

In view of the foregoing, the Court on March 8, 1985, granted Safeco's application for an *ex parte* right to attach order, and directed the Clerk of this Court to issue a writ of attachment affecting the property located at 6130 Warner Drive, Los Angeles, California.